Michael McShane (CA State Bar #127944)
mmcshane@audetlaw.com
AUDET & PARTNERS, LLP
221 Main Street, Suite 1460
San Francisco CA 94105
Telephone: 415.568.2555
Facsimile: 415.568.2556

*Attorneys for Plaintiffs and the Class*

*Additional counsel listed on signature page*


## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| _____ : | |
| IN RE: CERTAINTEED CORPORATION : | **MDL DOCKET NO. 1817** |
| ROOFING SHINGLES PRODUCTS : | |
| LIABILITY LITIGATION : | |
| _____ : | |
| : | |
| : | |
| : | |
| : | |
| _____ : | |


## PLAINTIFF'S MOTION AND MEMORANDUM IN SUPPORT OF
## MOTION FOR THE PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ................................................................................. 1

II.    HISTORY OF THE LITIGATION ......................................................................... 2

III.    THE PROPOSED SETTLEMENT ........................................................................ 3

    A.    The Settlement Class ............................................................................... 4

    B.    The Settlement Benefits ............................................................................ 4

    C.    Attorneys' Fees ......................................................................................... 5

    D.    Settlement Administration and Notice .................................................... 5

    E.    Claims Resolution Procedure ................................................................. 6

    F.    Exclusion and Objection Rights ............................................................. 6

    G.    Enhanced Compensation for the Class Representatives .......................... 7

IV.    ARGUMENT .......................................................................................................... 7

    A.    It is Appropriate to Certify the Settlement Class as a National Class for Purposes of the Settlement ............................................................. 7

        1.    The Elements of Rule 23(a) Are Satisfied in the Present Case ........................... 9

            (a)    Numerosity ......................................................................... 10

            (b)    Commonality ..................................................................... 11

            (c)    Typicality ........................................................................... 11

            (d)    Adequacy ........................................................................... 14

                i.    The Class Has Been More Than Adequately Represented by Class Counsel ... 14

               ii.    The Class Representative's Interests Are Not Antagonistic to Those of the Class ............................................... 15

        2.    The Requirements of Rule 23(b)(3) Are Met in the Settlement Context ........... 15

    B.    The Settlement Agreement Should Be Granted Preliminarily Approval By The Court .................................................................. 17

        1.    The Standards and Procedures for Preliminary Approval ........................ 18

        2.    The Settlement With CertainTeed Is Fair, Reasonable and Adequate .......... 20

    C.    THE COURT SHOULD DIRECT NOTICE TO THE CLASS ........................... 25

    D.    A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED ........................ 27

V.    CONCLUSION ..................................................................................................... 27

i

# TABLES OF AUTHORITIES

## Cases

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................. 7, 16, 18, 23

*Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)
........................................................................................................................................... 19, 20

*Austin v. Pa. Dept. of Corp.*, 876 F.Supp. 1437 (E.D. Pa. 1985) ........................................... 20, 21

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ...................................................................... 11, 12

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3rd Cir. 1998) ................................................... 9

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3rd Cir. 1977) ........................................................... 12

*Bronson v. Board of Education of the City School District of the City of Cincinnati*, 604 F. Sup.
68 (S.D. Ohio 1984) ................................................................................................................. 18

*Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314 (E.D. Pa. 1993) ........................................... 27

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) ............................................... 21

*Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) .................................................. 14

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ........................................................................ 23

*Cureton v. NCAA*, 1999 U.S. Dist. LEXIS 9706, at *14-15 (E.D. Pa. July 1, 1999) .................. 10

*Day v. NLO, Inc.*, 144 F.R.D. 330 (S.D. Ohio 1992), *vacated in part on other grounds*, 5 F.3d
154 (6th Cir. 1993) ................................................................................................................... 12

*Dietrich v. Bauer,* 192 F.R.D. 119 (S.D.N.Y. 2000) ................................................................... 15

*Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir.), *cert. denied*, 424 U.S. 946 (1985) ........................ 8

*Fisher Brothers v. Phelps Dodge Industries, Inc.,* 604 F.Supp.446 (E.D. Pa. 1985) .................. 24

*Fox v. Prudent Resources Trust*, 69 F.R.D. 74 (E.D. Pa. 1975) .................................................. 10

*General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147 13 (1982) ................................... 12

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ............................................................................. 20

*Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987) ......... 13

*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) ............................................................. 7

*Hannahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) ................................................................... 22

*Harris v. Reeves*, 761 F. Supp. 383 (E.D. Pa. 1991) ................................................................... 26

*Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978) ............................................ 16

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992) .................................. 13

ii

*Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979)................................................................... 11

*In re Agent Orange Product Liability Litigation*, 818 F.2d 145 (2d Cir. 1987) .................... 11, 26

*In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D.Pa. 1984) ............................ 10, 11, 12, 14

*In re Auto Refinishing Paint Antitrust Litig.*, 2004 WL 1068807 at *2 (E.D. Pa May 11, 2004) 19, 20, 22

*In re Baldwin-United Corp. Sec. Lit.*, 105 F.R.D. 475 (S.D.N.Y. 1984)....................................... 21

*In re Beef Indus Antitrust Litig.*, 607 F.2d 167 (5th Cir. 1979), cert denied, 452 U.S. 905 (1981) . 8

*In re Chambers Dev. Sec. Litig .*, 912 F.Supp. 822 (W.D. Pa. 1995) ........................................... 24

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D.Minn.1974)........................................................................................................................ 23

*In re Corrugated Container Antitrust Litigation,* 643 F.2d 195 (5th Cir. 1981) .......................... 19

*In Re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga. 1992).................... 26

*In re Federal Skywalk Cases*, 95 F.R.D. 483, 485-86 (W.D. Mo. 1982 )..................................... 12

*In re First Commodity Corp. of Boston Customer Accts. Litig.*, 119 F.R.D. 301 (D. Mass. 1987) ........................................................................................................................................... 23

*In Re Flat Glass Antitrust Litig.,* 191 F.R.D. 472 (W.D. Pa. 1999)............................................ 10

*In re General Instruments Sec. Litig.*, 209 F.Supp. 2d 423 (E.D. Pa. 2001) ............................... 25

*In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)................................................................................................................. 19, 20, 21, 23

*In re Linerboard Antitrust Litig.*, 292 F.Supp. 2d 631 (E.D. Pa. 2003)................................. 19, 22

*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180 (D.N.J. 2008)........................................... 13

*In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79 (E.D.Pa. 2003)........................ 13

*In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379 (D. Md. 1983) ............................ 19

*In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99 (S.D.N.Y. 1999)....................... 25

*In re Prudential Sec. Inc. Limited Partnership Litig.,* 163 F.R.D. 200 (S.D.N.Y. 1995)...... passim

*In re Silicone Breast Implant Litigation*, MDL No. 926............................................................... 14

*In re Telectronics Pacing Systems, Inc.*, *Accufix Atrial*............................................. 10, 11, 12, 16

*In re Vicuron Pharms., Inc. Secs. Litig.*, 512 F. Supp. 2d 279 (E.D. Pa. 2007) .......................... 23

*In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516 (3d Cir. 2004)............................... 19, 21, 23

*In re Warner Communications Sec. Lit.,* 798 F.2d 35 (2d Cir. 1986)........................................... 21

*Knell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999) ......................................................... 16

*Kuhn v. Philadelphia Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978) .............................................. 11

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994)........................................... 22, 24

*Lewis v. Curtis*, 671 F.2d 779 (3rd Cir. 1982) ............................................................................ 14

*M. Berenson Co. v. Faneuil Hall Market Place, Inc.*, 671 F. Supp. 819 (D. Mass 1987)........... 21

*Mack v. Suffolk County,* 191 F.R.D. 16 (D. Mass. 2000) ............................................................ 11

*Marsden v. Select Medical Corp.*, 246 F.R.D. 480 (E.D. Pa. 2007)............................................ 10

*McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32 (E.D. Pa. 1985) .................. 10

*Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir. 2001)................. 16

*Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F.Supp. 292 (M.D. Pa. 1995).............................. 22

*Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985) ................................................................ 25

*Pyke v. Cuomo,* 209 F.R.D. 33 (N.D.N.Y. 2002) ........................................................................ 10

*Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181 (N.D. Ill. 1992)................................... 12

*Scott v. University of Delaware,* 601 F.2d 76 (3rd Cir. 1979)...................................................... 12

*Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977)....................................... 11

*Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988)........................................... 12

*Stewart v. Abraham*, 275 F.3d 220 (3d. Cir. 2001)...................................................................... 10

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ........................................................ 20

*Thomas v. NCO Financial Sys.*, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002) .................. 19

*Trief v. Dun & Bradstreet Corp.,* 840 F. Supp. 277 (S.D.N.Y. 1993)......................................... 21

*Valentino v. Carter-Wallace*, *Inc.*, 97 F.3d 1227 (9th Cir. 1996)................................................ 25

*Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956 (3d Cir. 1983)................................... 20

*Walsh v. Pittsburgh Press Co.,* 160 F.R.D. 527 (W.D. Pa. 1994) ................................................. 8

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) .................................................................. 21

*Weiss v. York Hospital*, 745 F.2d 786 (3rd Cir. 1984)...................................................... 12, 14, 24

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3rd Cir. 1975) ............................................... 9, 14

*Yslava v. Hughes Aircraft Co.*, 845 F.Supp. 705 (D.Ariz. 1993) ................................................ 10

## Rules

Fed. R. Civ. P. 23(a). .................................................................................................................. 9

Fed. R. Civ. P. 23(b)(3).............................................................................................................. 16

Fed. R. Civ. P. 23(e) .................................................................................................................. 18

**Treatises**

2 Newburg, §7.24 ........................................................................................ 14, 22

Manual for Complex Litigation, Fourth (2008) ......................................... 18, 27

Wright, Miller & Kane, Federal Practice & Procedure: Civil 2d § 1754 ....................... 17

Plaintiffs respectfully submit this memorandum in support of their Motion for Preliminary Approval of Class Action Settlement.  This motion will be based on this memorandum, the accompanying declarations and the presentations of counsel at the hearing before this Court.  For the reasons stated, the Court should grant preliminary approval of the proposed settlement of this class action, order the dissemination of notice, and schedule a final fairness hearing.

## I.    PRELIMINARY STATEMENT

In a Settlement Agreement executed on December 15, 2009, Plaintiffs, through Class Counsel, have secured a Proposed Settlement ("Settlement") that provides substantial benefits to a nationwide class of consumers who presently own, or owned property on which CertainTeed Organic Shingles ("Shingles") have been installed, or who between August 1, 2006 and the date of this settlement, settled their warranty claims for the Shingles with CertainTeed.  The Settlement establishes a claims process whereby owners of Shingles that have failed will obtain cash compensation based primarily on the size of the roof and the extent of the failure.  The specific details of the claims process and distribution of funds are set forth in the Settlement and will be described herein.

Class Counsel respectfully submits that the terms of the Settlement are eminently fair, adequate, and reasonable for the Class and that the requirements for final approval will be satisfied.  In considering preliminary approval, however, the only issue before the Court is whether the proposed Settlement is within the range of what may be found to be fair, adequate, and reasonable, so that Class members can be notified of the proposed Settlement and a fairness hearing can be scheduled.  Only after Class members and others have had an opportunity to receive notice and present supporting or opposing evidence at a formal fairness hearing, will the Court be called upon to render a final judgment regarding the fairness of the proposed Settlement.

At this preliminary stage of the settlement process, Plaintiffs respectfully request that the Court: (i) grant preliminary approval of the proposed Settlement; (ii) certify the Settlement Class

1

pursuant to the provisions of Fed. R. Civ. P. 23(b)(3); (iii) schedule a fairness hearing to consider final approval; (iv) direct that notice of the proposed Settlement and hearing be provided to absent Class members in a manner consistent with the Settlement Agreement, and in the form and content substantially as set forth in Settlement Agreement;  (v) enter the proposed Order for Preliminary Approval filed contemporaneously herewith; and (vi) appoint Michael McShane of Audet & Partners, LLP, Robert Shelquist of Lockridge Grindal Nauen, P.L.L.P, and Charles LaDuca of Cuneo Gilbert & LaDuca, LLP as class counsel.

## II.    HISTORY OF THE LITIGATION

Beginning with the filing of the original *Barrett* action in this Court on September 15, 2006, CertainTeed faced numerous lawsuits relating to the premature degradation and failure of CertainTeed Organic Roofing Shingles.  Given the multitude of pending cases, on February 16, 2007, all related litigation was consolidated before this Court by the Judicial Panel on Multi-District Litigation.  The proposed Settlement is presented on behalf of all Plaintiffs with litigation pending in the MDL before this Court.

Prior to filing these cases, Class Counsel undertook an extensive investigation of the issues raised by the failure of the CertainTeed Shingles and prepared for protracted litigation. Among other things, Class Counsel investigated the cause of the failure of the shingles, the applicable legal standards for product defect cases involving defective construction materials and relevant class action standards.  Class Counsel assembled a uniquely qualified team of attorneys to prosecute the cases. Included in this team are counsel who have substantial experience in prosecuting class actions, in particular, class actions involving defective residential construction materials.[1]

During the course of this litigation, Class Counsel have obtained and analyzed hundreds of thousands of pages of documents obtained through discovery, and taken and defended

---

[1]   On April 16, 2007, this Court appointed Michael McShane of Audet & Partners, LLP, Charles LaDuca of  Cuneo, Gilbert & LaDuca, and Robert Shelquist of  Lockridge Grindal Nauen P.L.L.P. as interim lead counsel and Arnold Levin of Levin, Fishbein, Sedran & Berman as Liaison Counsel.  These attorneys ask that their appointment be extended to serve as settlement class counsel pursuant to F.R.C.P. Rule 23(g).

numerous depositions.  In addition, Class Counsel have retained product defect experts, incurred significant costs relating to the forensic testing and analysis of the organic shingles and performed numerous on-site property inspections.  In short, Class Counsel have aggressively prosecuted the claims against the Defendant.

The litigation has also produced significant law and motion practice before this Court, including motions involving discovery disputes, disagreement between the parties regarding communications with class members and Plaintiffs' motion for class certification.

After the litigation had progressed for about eighteen months, the parties commenced settlement negotiations in February of 2008.  These negotiations, which included the exchange of numerous written offers and counter-offers, several in-person meetings in Philadelphia and countless telephone conferences, were conducted contemporaneously with the ongoing discovery process.  The hard fought nature of these negotiations is demonstrated by the fact that it took nineteen months for the parties to reach a settlement.

In the end, the parties' determined and good-faith efforts to resolve the litigation resulted in a fair settlement which provides substantial benefits to Class members and presents a meaningful solution to an intractable legal problem. If approved, the proposed Settlement will bring an end to the hard fought litigation on terms which provide tangible and reasonable benefits to both sides.

## III.    THE PROPOSED SETTLEMENT

The Settlement's details are contained in the Settlement Agreement signed by the parties, a copy of which is attached as Exhibit 1 to the accompanying Declaration of Michael McShane in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("McShane Decl.").  The proposed Settlement offers a substantial recovery to Class members and does so through a claims process that does not impose undue burden on Class members.  (*See* Declaration of Matthew Hanson in Support of Defendant's Joinder to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Hanson Decl."))  Class members will receive a cash payment based primarily on the amount of CertainTeed Organic Shingles installed on

their property and the length of time the shingles have been on the roof.  The Settlement includes

an appeals process and annual reporting of the progress of the claims process to Class Counsel.

The Settlement treats all similarly situated Class members fairly and equally as the recovery of

every Class Member is based on the amount of CertainTeed Product they own or owned, the

existence of a warranty and the length of time since product was installed.  As structured, the

settlement ensures that a Class member with a greater number of damaged Shingles will receive

a higher payment than a Class member with fewer Shingles, but that similarly situated Class

members will receive the same amount of money "per shingle."

Class Counsel are all extremely experienced in class action litigation as well as the

settlement and claims process and believe that the proposed Settlement is a fair, adequate and

reasonable settlement and highly beneficial to the Class.

### A. The Settlement Class

The "Settlement Class" includes all individuals and entities that own, as of the date of

this Agreement, homes, residences, buildings, or other structures located in the United States or

Canada whose roofs  contain or contained roofing shingles made with a felt reinforcement base

material that is saturated with asphalt, also known as organic roofing shingles manufactured by

CertainTeed after July 1, 1987; all individuals and entities who previously owned such a building

and who, prior to the date of this Agreement, sold or transferred the building and at the time of

the sale or transfer retained the right to make a claim for the shingles pursuant to a valid

documented assignment; and all individuals and entities who owned such a building and who,

between August 1, 2006, and the Effective Date of this Agreement, have settled or settle their

warranty claims for such shingles.[2]  (McShane Decl. Ex. 1, ¶ 2.1.)

### B. The Settlement Benefits

Class members will be provided with cash compensation based on whether or not their

CertainTeed Shingles remain under warranty, the amount of Shingles they have installed on their

---

[2]     Approximately seven-tenths of one percent (.007%) of the shingles were sold in Canada.  CertainTeed has chosen to provide notice of the settlement and the settlement benefits to all Canadian claimants under the same terms as the United States Claimants.

property, how long the Shingles have been on the property and whether or not they previously made a claim and accepted a payment for damage to the Shingles.

The Settlement establishes a claims process whereby owners of Shingles that have failed will obtain compensation under one of three categories: (1) those who own or owned faulty Shingles that are still under warranty will obtain compensation of $74 per square; (2) owners of Shingles that have failed but are out of warranty will obtain compensation of $34 per square; and (3) those who resolved warranty claims with CertainTeed on or after August 1, 2006, and have executed a release in favor of CertainTeed will receive 20% of the difference between the amount received on the warranty claim and the amount that would have been received in the absence of a release.  The payments under each of the categories will be reduced on a pro rata basis to reflect the actual usage a class member received from the roof.  (McShane Decl. Ex. 1, §6.)

C.      **Attorneys' Fees**

Attorneys' fees and costs for Class Counsel are subject to approval by the Court and will be paid separately by CertainTeed in addition to any relief granted to Plaintiffs and Settlement Class members.  Class Counsel and counsel for CertainTeed have not agreed on an amount of attorneys' fees and costs to be paid Class Counsel.  These negotiations are continuing and if the parties agree on an amount, that amount will be subject to Court approval.  If the parties do not reach agreement on an amount prior to the final fairness hearing, then Class Counsel will apply to this Court for an award of attorneys' fees and costs.

The requested fee amount is in addition to the relief Defendant will provide to the Class under the terms of the Settlement, and will in no way reduce any Class member's recovery.  The enforceability of the Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded.  The parties did not discuss the amount of attorneys' fees and costs until after all of the material terms of the settlement were agreed upon.  (McShane Decl. at ¶ 12.)

D.      **Settlement Administration and Notice**

As set forth in the Settlement Agreement, all costs of notice and claims administration will be paid by CertainTeed.  (McShane Decl. Ex. 1, ¶ 4.32.)  The initial claims administration will be undertaken by CertainTeed.  (McShane Decl. Ex. 1, ¶ 4.2.)  If a claim is denied in whole or part, class counsel will be notified and both class counsel and the claimant will have the right to contest the denial.  (McShane Decl. Ex. 1, ¶ 4.18.)  The parties have agreed to provide members of the Settlement Class with notice in accordance with the Notice Plan, along with the form of Direct Mail Notice and Publication Notice.  (*See* McShane Decl. Ex. 1, § 9; Exs. 1-E (short form notice for print media), 1-F (script for televised notice), 1-G (internet notice), 1-H (long form notice with standard claim for), 1-I (long form notice with abbreviated claim form), 1-J (press release regarding settlement)).

## E.    Claims Resolution Procedure

The Settlement Agreement provides that Class Members who wish to participate in the settlement will be able to file a Claim Form at any time prior to the expiration of their existing warranty or, if no warranty exists as they are a prior releaser, within twelve months of this settlement becoming final.  Copies of the Claim Forms agreed to by the parties are attached hereto as McShane Decl. Exs. 1-B and 1-C.  Claim Forms will be provided to Class Members upon request by CertainTeed.  Alternative methods of obtaining a claim form are though calling a toll-free number and from the internet through a settlement website which will provide a user-friendly method for downloading claim forms.

## F.    Exclusion and Objection Rights

Any member of the Settlement Class wishing to do so may opt-out of the Settlement Class during the opt-out period.  (McShane Decl. Ex. 1, ¶ 10.1.)  The opt-out period will be sixty days from the date notice is commenced.  (*Id.*)  Those who wish to opt-out can do so by providing a written request for exclusion which includes the potential Class member's name, address, telephone number, and an express statement of desire to be excluded from the Settlement Class.  (*Id.*)  The request must be filed with the Clerk of the Court and sent by first-class mail to counsel for CertainTeed and Class Counsel.

Alternatively, Class members may file a notice of intent to object to the Settlement if they wish to do so.  (McShane Decl. Ex. 1, ¶ 10.8.)  Class members who wish to object must file a notice of intent with the Clerk of the Court at least forty-five days before the date set for the Final Settlement Hearing.  (*Id.*)  Copies of the notice must also be sent to Class Counsel and counsel for CertainTeed.  (*Id.*)  The statement of intent to object should include whether the objector intends to appear at the fairness hearing, a detailed statement of the specific legal and factual bases for each objection, a list of witnesses and photocopies of exhibits that the objector intents to introduce at the Final Settlement Hearing, and must be signed by the objector.  (*Id.*)  Further, if the objector retains counsel for the purpose of objecting, counsel should be identified by name, address, and phone number.

### G.  <u>Enhanced Compensation for the Class Representatives</u>

The parties have agreed that each individual identified as a representative plaintiff in one of the actions pending before this Court as part of the MDL will receive enhanced compensation for their efforts.  These individuals include Gilbert Anderson, Catherine Barrett, David Butz, Roger Dunker, Jack Helmick, Frederic G. Eldridge, Dawn Lynn Johnson, Roger Luft, Thomas Rybarczyk, William Simpson, Pat Nagy Swartz, Sherwood Wolfson, and Carole Venhaus.  (McShane Decl. Ex. 1, ¶ 7.2.)  Named Plaintiffs John Cassidy, Elizabeth Cumming, and Nancy Hollis will provide CertainTeed with samples of the shingles on their buildings so that CertainTeed may determined whether those shingles are CertainTeed Organic Shingles.  (*Id.*)  If the Named Plaintiff was deposed, he or she will receive an incentive payment of $10,000; if the named Plaintiff was not deposed, he or she will receive an incentive payment of $5,000.

## IV.  ARGUMENT

### A.  <u>It is Appropriate to Certify the Settlement Class as a National Class for Purposes of the Settlement</u>

The benefits of the proposed Settlement can be realized only through the certification of a settlement class.  The Supreme Court of the United States has now emphatically confirmed the viability of such settlement classes.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997).

So, too, have the federal appeals courts.  *See e.g., In re Prudential Ins. Co. Of Am. Sales Practices Litig.,* 148 F.3d 283 (3d Cir. 1998), *cert. denied*, 119 S. Ct. 890 (1999) ("Prudential II");  *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998). In this Circuit, there is a preference for class certification: "The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action*." Eisenberg v. Gagnon,* 766 F.2d 770 (3d Cir.), *cert. denied*, 424 U.S. 946 (1985)*; see also Walsh v. Pittsburgh Press Co.,* 160 F.R.D. 527 (W.D. Pa. 1994) (Ambrose, J.) (same).  In the case of settlements, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under scrutiny of the trial judge." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R. D. 202, 205 (S.D.N.Y 1995)(*quoting In re Beef Indus Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979), cert denied, 452 U.S. 905 (1981)).  Here, there is no likelihood of abuse of the class action device, and the settlement is fair, reasonable and adequate and is subject to approval by the Court.

Rule 23 governs the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class.  All the criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes.  Thus, a settlement class should be certified where the four requirements of Rule 23(a) numerosity, commonality, typicality, and adequacy are satisfied and when one of the three subsections of Rule 23(b) is met.  Certification of the proposed settlement class is appropriate here as it is requested to effectuate a settlement of claims against CertainTeed.  For example, given the fact that thousands of property owners in the United States have CertainTeed Organic Shingles installed on their properties, there is no question that the numerosity requirement is met.  The commonality and typicality requirements also are easily satisfied, as the claims of the Class representatives and all Class members are premised on the same theories of breach of warranty, strict liability, and negligence in the design, manufacture, testing, marketing, distributing and putting into the stream of commerce defective CertainTeed Organic Shingles.  Further, adequacy

of representation is assured as the Class is represented by legal counsel who have a wealth of experience in complex product liability litigation such as this.

Certification of the Class under Rule 23(b)(3) for settlement of compensatory damages claims also is appropriate because all of Plaintiffs' claims for compensatory relief are premised upon the predominating common issue of CertainTeed's conduct in marketing, manufacturing, and distributing the Shingles. There is no danger that individual variations in the type or magnitude of damage suffered by individual Class members will affect predominance as the Class representatives have the same type of damages and seeks the same type of relief as members of the proposed Class.  Moreover, resolution of the litigation by a class settlement is superior to individual adjudication of the Class members' claims for compensatory relief.  In particular, the Settlement provides members of the Class with an ability to obtain predictable, certain, and definite compensatory relief promptly and contains well-defined administrative procedures to assure due process in the application of the Agreement to each individual claimant including the right to "opt-out."  By contrast, individualized litigation carries with it great uncertainty, risk, and costs and provides no guarantee that the injured Class member will obtain necessary and timely compensatory relief at the conclusion of the litigation process.  Settlement also would relieve judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against CertainTeed.

### 1.    The Elements of Rule 23(a) Are Satisfied in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the named Plaintiffs must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  See, e.g., *Barnes v. American Tobacco Co*., 161 F.3d 127 (3d Cir. 1998); *In re Prudential Ins. Co. Am. Sales Practice Litig. ("Prudential II")*, 148 F.3d 283, 308-09 (3d Cir. 1998); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975).  Here, all four elements easily are satisfied.

(a)    <strong>Numerosity</strong>

Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so numerous that joinder of all members is impracticable."  There is no threshold number required to satisfy the numerosity requirement and the most important factor is whether joinder of all the parties would be impracticable for any reason.  *Stewart v. Abraham*, 275 F.3d 220, 227-228 (3d. Cir. 2001) (noting that there is no minimum number to satisfy numerosity and observing that generally the requirement is met if the number of plaintiffs exceeds 40).  As is frequently pointed out, this rule does not impose a burden to demonstrate that joinder of all class members is "impossible."  *See, e.g., Cureton v. NCAA*, 1999 U.S. Dist. LEXIS 9706, at *14-15 (E.D. Pa. July 1, 1999); *McMahon Books, Inc. v. Willow Grove Associates*, 108 F.R.D. 32, 35 (E.D. Pa. 1985); *Fox v. Prudent Resources Trust*, 69 F.R.D. 74, 78 (E.D. Pa. 1975).  Moreover, numerosity is not determined solely by the size of the class, but also by the geographic location of class members.  *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

In the present case, Plaintiffs seek certification of a Settlement Class of virtually all persons who own property with CertainTeed Organic Shingles manufactured since July 1, 1987 in the United States.  It is estimated that there are several hundred thousand Class Members geographically dispersed throughout the United States.  (McShane Decl. ¶ 3.)  "[A] class comprised of 4,000 members is obviously numerous, and renders joinder impracticable."  *Pyke v. Cuomo,* 209 F.R.D. 33, 41 (N.D.N.Y. 2002).  This is especially true where there is a "significant geographic distribution among the class members."  *In Re Flat Glass Antitrust Litig.,* 191 F.R.D. 472, 477 (W.D. Pa. 1999).  There can be no dispute, therefore, that the proposed Class meets the numerosity requirement.

### (b)    Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class."  A common question is one which "arises from a common nucleus of operative facts regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants."  *In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D. Pa. 1984); *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705 (D. Ariz. 1993). The rule does not require that all questions be common or even that common questions predominate.  *Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979); *Kuhn v. Philadelphia Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978). Plaintiffs are not required to show that all class members' claims are identical to each other, and any difference between the proposed class members, "while arguably relevant as defenses to liability, do not change the fact that this class action raises the same basic claim and shares common questions of law." *Mack v. Suffolk County,* 191 F.R.D. 16, 23 (D. Mass. 2000).  Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2).  *See Prudential II*, 148 F.3d at 310; *Telectronics*, 172 F.R.D. at 280; *Asbestos School Litigation*, 104 F.R.D. at 429; *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977); *see also In re Agent Orange Product Liability Litigation,* 818 F.2d 145 (2d Cir. 1987).

Applying these principles, it is evident that the commonality requirement of subsection (a)(2) is easily met here.  The central issues posed by this litigation are the defective nature of the CertainTeed Organic Shingles, specifically, the likelihood that they will degrade and fail well before the expiration of their warranted life.  Given the presence of these common questions central to this litigation, Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met here.

### (c)    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class."  As the Third Circuit described in *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994):

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align

> with those of absent class members so as to assure that the absentees' interests will be fairly represented.  [Citation omitted.]  The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees.  [Citation omitted].
>
> Typically entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or. . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.'  [Citations omitted.]  Commentators have noted that case challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.  [Citation omitted.]

*Id.* at 57-58.

The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to assure that the interests of unnamed class members will be protected adequately by the named class representative.  *See e.g., General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147 (1982); *Prudential II,* 148 F.3d at 311; *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir. 1977); Asbestos *School Litigation*, 104 F.R.D. at 429-30.  The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members.  *See, e.g.*, *Falcon,* 457 U.S. at 156-157; *Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984); *Scott v. University of Delaware,* 601 F.2d 76 (3d Cir. 1979); *Telectronics*, 172 F.R.D. at 280. The typicality requirement has been liberally construed by the federal courts. See, *e.g., Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In product liability cases such as this, individual variations among the class representatives and class members concerning such matters as magnitude of injury to a property and the like do not defeat a finding of typicality because they are not germane to the "factual and legal issues of a defendant's liability [which] do not differ dramatically from one Plaintiff to the next."  *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988); a*ccord, e.g., Telectronics*, 172 F.R.D. at 280; *Asbestos School Litigation*, 104 F.R.D. at 430; *In re Federal*

*Skywalk Cases*, 95 F.R.D. 483 (W.D. Mo. 1982) (Rule 23(b)(3) mass tort class certified; "egregiousness of a class [representative's] injuries is irrelevant" to typicality);  *Day v. NLO, Inc.*, 144 F.R.D. 330 (S.D. Ohio 1992), *vacated in part on other grounds*, 5 F.3d 154 (6th Cir. 1993) (The Court held that the "important question is to what extent those differences, when compared to the nature and extent of the shared characteristics of the named Plaintiffs and class members' claims, will defeat the court's ability to achieve a considerable efficiency through collective adjudication of those claims.") *(*quoting *Boggs,* 141 F.R.D. at 65).

　　In the present case, individual variations among Class members do not render the named representative Plaintiffs' claims atypical of those of the Class.  The claims of the representative Plaintiffs and each of the Class members are predicated on the premature failure of CertainTeed Organic Shingles.  CertainTeed's liability for the resulting damage to each Class member does not depend on the individual circumstances of the Class members.  Rather, the Complaint alleges that defendant's conduct in manufacturing, promoting, and selling CertainTeed Organic Shingles was unlawful and gives rise to liability to all persons who, like the named Plaintiffs, experienced failure of the Shingles prior to the expiration of their warranted life.  In order to prevail, therefore, the named Plaintiffs and each member of the Class will be required to make the same factual presentation and legal argument with respect to the common questions of liability cited earlier, regardless of the individual circumstances which may affect their ability to prove individual causation and amount of damages on an individualized basis.  Accordingly, the common issues necessarily share "the same degree of centrality" to the named representative's claims such that in litigating the liability issues the named Plaintiffs reasonably can be expected to advance the interests of all absent Class members in a favorable determination with respect to each such issue.  "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and if based on the same legal theory, "*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3[d] Cir. 1992); *Grassy v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987).  Even if there are "pronounced factual differences among the plaintiffs,

13

typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiff does not have any unique circumstances." *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 84 (E.D.Pa. 2003); *see also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2008)("[W]hile the Court must ensure the interest of the plaintiffs are congruent the Court will not reject the Plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future.")  Accordingly, the typicality requirement of the rule is easily satisfied.

### (d)   Adequacy

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class."  The Third Circuit consistently has ruled that:

> Adequate representation depends on two factors:  (a) the Plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiffs must not have interests antagonistic to those of the class.

*Weiss,* 745 F.2d at 811 (quoting *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 247); *see also* Prudential *II*, 148 F.3d at 312.  These two components are designed to ensure that absentee class members' interests are fully pursued.

### i.   The Class Has Been More Than Adequately Represented by Class Counsel

The existence of the elements of adequate representation are presumed and "the burden is on the defendant to demonstrate that the representation will be inadequate." *Asbestos School Litigation,* 104 F.R.D. at 430, citing *Lewis v. Curtis,* 671 F.2d 779 (3d Cir. 1982); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) (quoting 2 NEWBURG ON CLASS ACTIONS, §7.24 at pp. 7-81, 2-82).

In the present case, the presumption of adequate representation cannot be rebutted.  With respect to the issue of adequacy of counsel, the Court may take judicial notice of the fact that Class Counsel have substantial experience in litigating mass tort class actions and complex

14

product liability cases.  Class Counsel have been lead counsel in numerous complex class action cases. Class Counsel have and will continue to aggressively litigate this case.  Counsel have taken significant discovery that has enabled them to negotiate an advantageous settlement on behalf of the class.  Class Counsel negotiated the proposed Settlement from a position of knowledge and strength, and as advocates for the entirety of the Class.  The adequacy requirement is satisfied for certification.

### ii.    The Class Representative's Interests Are Not Antagonistic to Those of the Class

There is nothing to suggest that the representative Plaintiffs have significant interests antagonistic to those of the absent Class members in the vigorous pursuit of the Class claims against CertainTeed.  *See, Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("gauging the adequacy of representation requires an assessment whether the class representatives have interests antagonistic to those of the class they seek to represent").  Here, both the Class representatives and Class members are equally interested in detailing to the Court and a jury the defective nature of CertainTeed Organic Shingles, and are further committed to obtaining appropriate compensation from CertainTeed.  They have obtained an advantageous settlement that treats all Class members in the same fashion, and provides real value to all.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiffs now turns to consideration of the factors which, independently, justify class treatment of this action under subdivision  23(b)(3) of the rule.

### 2.    The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

In addition to satisfying Rule 23(b), plaintiffs must show that each putative class falls under at least one of the three subsections of Rule 23(b).  Here, the settlement class qualifies under Rule 23(b)(3).  Under 23(b)(3) a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient

adjudication of the controversy.  The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 187 (3d Cir. 2001).  Common questions must predominate over individual questions.  The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978).  Rule 23(b)(3) does not require that all questions of law or fact be common.  *See Telectronics*, 172 F.R.D. at 287-88.  In this regard, courts generally focus on the liability issues and if these issues are common to the class, common questions are held to predominate over individual questions.  *See id.*

Here, Plaintiffs raise common issues of fact and law that predominate over any individual issues that might arise.  The Class members' claims for compensatory relief are founded upon common legal theory related to the singular issue of CertainTeed's designing, creating, manufacturing, testing, marketing, distributing and/or selling defective CertainTeed Organic Shingles.  Thus, Class members have an interest in the adjudication of what is by far and away the single issue of law and fact  dominate this litigation – e.g., whether or not the subject Organic Shingles are defective.  Once that issue is determined on a class-wide basis, the remaining issues focus on relatively minor matters such as the size of a Class member's roof and how long the roof has been on the structure.

The other requirement of Rule 23(b)(3) that must be satisfied is the superiority requirement (i.e., that a class action suit provides the best way of managing and adjudicating the claims at issue).  "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of

adjudication." *In re The Prudential Ins. Co. of America Sales Practices Litig., Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998), *cert. denied, Knell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999).  Considerations of judicial economy underscore the superiority of the class action mechanism in this case.  *See Prudential II*, 148 F.3d at 316 and n.57.  Settlement on a class basis also is superior to individual litigation and adjudication because settlement provides Class members with prompt compensation for their damages.  By contrast, compensation resulting from litigation is highly uncertain and may not be received before lengthy trial and appellate proceedings are complete.  In addition, the Settlement obviously removes the overwhelming and redundant costs of individual trials.

Accordingly, the Settlement Agreement renders a class action superior to other potential avenues of recovery for Plaintiffs and the Class.  Therefore, this case presents the paradigmatic example of a dispute that can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights.  WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE: CIVIL 2D § 1754.  At the same time, the Settlement fully preserves the due process rights of each individual plaintiff seeking compensatory damages.

In sum, the requirements of Rule 23(b)(3) are satisfied and certification of a the proposed class is appropriate.

**B.**      **The Settlement Agreement Should Be Granted Preliminarily Approval By The Court**

In addition to class certification, Plaintiffs seeks preliminary approval of the Settlement. Preliminary approval requires a finding that the Settlement falls within the range of possible approval, meaning, primarily, that Settlement was reached as a result of arms-length negotiations and with sufficient information.  Here, both those requirements are satisfied.

As detailed herein above, after a lengthy pre-filing investigation and protracted litigation, Class Counsel entered settlement negotiations with CertainTeed.  The negotiations were wide-

17

ranging and adversarial, involving numerous in-person meetings and countless telephone conferences taking place over an eighteen month period.  These negotiations were conducted by experienced and knowledgeable counsel, who had the benefit of the wealth of fact discovery and expert opinions.

To be sure, Class Counsel conducted extensive discovery. Settlement was achieved only after nearly three years of litigation in this Court.  Class Counsel undertook extensive discovery, filed and defended multiple discovery motions, filed a motion for class certification, participated in the depositions of witnesses for both Defendants and Plaintiffs.  Accordingly, at this stage of preliminary approval, there is clear evidence that the Settlement is within the range of possible approval and thus should be preliminarily approved.

### 1. The Standards and Procedures for Preliminary Approval

Rule 23(e) of the Federal Rules of Civil Procedure mandates that a class action cannot be settled without court approval:

> A class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs.

Fed. R. Civ. P. 23(e); *Amchem,* 521 U.S. at 617; *Prudential* II, 148 F.3d at 316.

The procedure of providing notice to the class followed by a hearing to consider approving a class settlement has been accepted by numerous courts and is now standard practice. *Prudential II*, 148 F.3d at 326-27; *see also Bronson v. Board of Education of the City School District of the City of Cincinnati*, 604 F. Sup. 68 (S.D. Ohio 1984).

The MANUAL FOR COMPLEX LITIGATION, FOURTH (2008) § 26.632, summarizes the recommended procedure that courts have articulated for the class action settlement approval process:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submits the proposed terms of the settlement and the judge makes a preliminary fairness evaluation… If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined… The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the

settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

When deciding preliminary approval, a court does not conduct a "definitive proceeding on fairness of the proposed settlement." *In re Mid-Atlantic Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983); *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995)(holding that the "preliminary determination establishes an initial presumption of fairness.") The "definitive proceeding on fairness of proposed settlement" must await the final hearing, at which fairness, reasonableness and adequacy of the settlement is addressed. *In re Linerboard Antitrust Litig.*, 292 F.Supp. 2d 631, 638 (E.D. Pa. 2003). Indeed,

> In evaluating a settlement for preliminary approval, the court need not reach any ultimate conclusions on the issues of fact and law that underline the merits of the dispute. . . . Instead, the court must determine whether 'the proposed settlement discloses grounds to doubt its fairness or otherwise obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class or excessive compensation for attorneys, and whether it appears to fall within the range of possible approval. . . . The analysis often focuses on whether the settlement is the product of 'arms-length negotiations.'

*In re Auto Refinishing Paint Antitrust Litig.*, 2004 WL 1068807 at *2 (E.D. Pa May 11, 2004) [citations omitted]; *Thomas v. NCO Financial Sys.*, 2002 WL 1773035, at *5 (E.D. Pa. July 31, 2002). An initial analysis of the terms and features of the proposed class settlement should give the Court confidence that it merits serious considerations by Class members, and that it will likely serve as the fair and comprehensive resolution of Class members' claims. Authorizations to disseminate notice reflects a recognition by the Court that the settlement is in the range of possible approval; the ultimate Rule 23(e) determination is reserved pending the completion of the notice and opt-out process, so the Court can consider input from the Class members who will be bound by the final approval Order. *See In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995); *In re Corrugated Container Antitrust Litigation,* 643 F.2d 195 (5th Cir. 1981); *Armstrong v. Board of School Directors of the City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)

Finally, in reviewing the proposed settlement, the Court should consider that "there is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004); *In re General Motors corp. Pick-up Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)(holding that 'the law favors settlement , particularly in class actions and other complex cases where substantial judicial resource can be conserved by avoiding formal litigation."); *Austin v. Pa. Dept. of Corp.*, 876 F.Supp. 1437, 1455 (E.D. Pa. 1985)(explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to "an overriding public interest.").

The settlement here clearly is "sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard," the legal standard for preliminary approval of a class action settlement.  *In re:  Auto Refinishing Pain Antitrust Litig.*, 2004 WL 1068807, at *1 (E.D. Pa. May 11, 2004)(quotation omitted).   A settlement falls within the range of of possible approval under Rule 23 turns upon whether there is a conceivable basis for presuming that the more rigorous standard applied for final approval will be satisfied.   The standard for final approval of a settlement consists of showing that the settlement is fair, reasonable, and adequate. See, *E.g., Prudential*, 148 F.3d at 316-17; *General Motors*, 55 F.3d at 785; *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990); *Walsh v. Great Atlantic & Pacific Tea Co.,* 726 F.2d 956 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

### 2.      The Settlement With CertainTeed Is Fair, Reasonable and Adequate

The Plaintiffs submit that the Settlement Agreement before the Court in this case falls well within the "range of possible approval," taking into consideration all relevant factors, and, therefore, preliminary approval of the Settlement should be granted.  A settlement falls within the "range of possible approval" under Rule 23 if there is a conceivable basis for presuming that the standard applied for final approval will be satisfied.  In this phase in the class action settlement process, the Court's function is not to make a final fairness determination, but, rather,

"to ascertain whether there is any reason to notify the Class members of the proposed settlement and to proceed with a fairness hearing."  *Armstrong v. Bd. of School Dir. Of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), overruled on other grounds.  *See General Motors,* 55 F.3d at 785; *Armstrong*, 616 F.2d at 314 (The purpose of the pre-notification hearing is "to determine whether the proposed settlement is "within the range of possible approval."); *In re Baldwin-United Corp. Sec. Lit.*, 105 F.R.D. 475 (S.D.N.Y. 1984)) ("Upon consideration of the proposed settlement presented to this Court for preliminary approval, the Court finds that it is at least sufficiently fair, reasonable and adequate to justify notice to those affected and an opportunity to be heard.").  It is well-established that there is an overriding public interest in resolving litigation, and this is particularly true in class actions.  *See Warfarin*, 391 F.3d at 534-535; *General Motors,* 55 F.3d at 784; *Austin*, 876 F.Supp. at 1455; *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992); *In re Prudential Sec. Inc. Limited Partnership Litig.,* 163 F.R.D. 200 (S.D.N.Y. 1995).

The Third Circuit has set forth a four-factor test to determine the preliminary fairness of a class action settlement.

(1) the negotiations occurred at arm's length;

(2)  there was sufficient discovery;

(3)  the proponents of the settlement are experienced in similar litigation; and

(4)  only a small fraction of the class objected.

*General Motors,* 55 F.3d at 785.  Subsequently, at the fairness hearing, the Court has the discretion under Rule 23(e) to finally approve the settlement if the Court finds it to be fair, adequate and reasonable to Class Members.  In the absence of fraud, collusion or the like, the Court should be hesitant to substitute its own judgment for that of counsel.  *Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982); *see also Trief v. Dun & Bradstreet Corp.,* 840 F. Supp. 277 (S.D.N.Y. 1993) ("absent evidence of fraud or overreaching [courts] consistently have refused to act as Monday morning quarterbacks in evaluating the judgment of count."); *In re*

*Warner Communications Sec. Lit.,* 798 F.2d 35 (2d Cir. 1986) ([I]t is not a district judge's job to dictate the terms of a class settlement."); *M. Berenson Co. v. Faneuil Hall Market Place, Inc.,* 671 F. Supp. 819 (D. Mass 1987) ("Where, as here, a proposed settlement has been reached after meaningfully discovery, after arm's length negotiations conducted by capable counsel, it is presumptively fair.") (footnote omitted).

Settlements negotiated by experienced counsel that results from arm's-length negotiations are generally entitled to deference from the court. *In re Auto-Refinishing Pain Antitrust Litig.*, 2003 WL 23316645 at *6 (E.D. Pa. Sep. 5, 2003); *In re Linerboard Antitrust Litig.*, 292 F.Supp. 2d 631, 640 (E.D. Pa. 2003)(holding that "[a] presumption of correctness is said to attach to a  class settlement reached in arm's-length negotiations between experienced, capable counsel," *citing Hannahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994)(giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith"); *Petruzzi's, Inc. v. Darling-Delaware Co.*, 880 F.Supp. 292, 301 (M.D. Pa. 1995)("the opinions and recommendations of such experienced counsel are indeed entitled to considerable weight"); 2 Newberg on Class Actions, (11.4)(3d ed. 1992)("There is usually an initial presumption of fairness when a proposed class settlement, which negotiated at arm's-length by counsel for the class is presented for court approval."). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e).

The negotiation process with CertainTeed supports a finding that the settlement is fair, reasonable and adequate. As discussed above and in the Declaration, the settlement with CertainTeed is the result of over 18 months of hard-fought, arm's-length negotiations between class counsel and CertainTeed counsel, all experienced and capable lawyers. Class Counsel and CertainTeed' counsel vigorously advocated their respective client's positions in the settlement negotiations and were prepared to litigate the case fully if no settlement was reached. Only after CertainTeed' counsel made hundreds of thousands of pages of documents available for review,

22

produced witnesses for depositions, plaintiff class representatives were deposed and inspections of plaintiffs' shingles conducted was the settlement reached.  Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt its fairness.

The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.  See *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *In re Vicuron Pharms., Inc. Secs. Litig.*, 512 F. Supp. 2d 279, 284 (E.D. Pa. 2007).  The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial.  *See In re First Commodity Corp. of Boston Customer Accts. Litig.*, 119 F.R.D. 301, 306-07 (D. Mass. 1987).  These economic gains multiply when settlement also avoids the costs of litigating class status -- often a complex litigation within itself.  Furthermore, a settlement may represent the best method of distributing damage awards to injured Plaintiffs, especially where litigation would delay and consume the available resources and where piecemeal settlement could result in the complete exhaustion of defendant's resources.

Plaintiffs submit that these factors balance heavily in favor of the proposed Settlement. To begin, the Settlement with the Plaintiffs was the result of arm's-length negotiations by experienced counsel on both sides of the table.  As noted above, the Settlement was negotiated on behalf of the Plaintiffs by a negotiating team of several Plaintiffs' counsel who have been vigorously active in prosecuting the class cases against CertainTeed.  These protracted negotiations required multiple bargaining sessions conducted over a nineteen month period. Thus, the concern noted in *Amchem* - concerning the vulnerability of a settlement claim where the parties had not been put to the test of a vigorous adversarial process in shaping their position at the bargaining table, *Amchem*, 521 U.S. at 601 & 620 - is not at issue here.

The fairness of the settlement process and of the Settlement Agreement itself also was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements.  *See General Motors*, 55 F.3d at 787-88; *Cotton v. Hinton*, 559 F.2d 1326 (5th

Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D.Minn.1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Industries, Inc.,* 604 F.Supp.446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight.").  This Settlement was negotiated by experienced counsel to meet all the requirements of Rule 23 as discussed in *Amchem*, and specifically to provide administrative procedures to assure all Class members equal and sufficient due process rights.  Accordingly, the Settlement was not the produce of collusive dealings, but, rather, was informed by the vigorous prosecution of the case by the experienced and qualified counsel.

Further, continued litigation would be long, complex and expensive, and a burden to Court dockets.  *Lake v. First National Bank*, 900 F. Supp. 726 (E.D. Pa. 1995) (expense and duration of litigation are factors to be considered in evaluating the reasonableness of a settlement); *Weiss v. Mercedes-Benz of N. Am. Inc.,* 899 F. Supp. 1297 (D.N.J. 1995) (burden on crowded court dockets to be considered).  Continuing this litigation against CertainTeed would entail a lengthy and expensive battle, involving legal and factual issues specific to CertainTeed. It is reasonable to expect that all such matters would be sharply disputed and vigorously contested, as they were in settlement negotiations.  Additionally, CertainTeed would assert various defenses, and a jury trial (assuming the case proceeded beyond pretrial motions) might well turn on class questions of proof making the outcome of such trial uncertain for both parties. Moreover, even after trial is concluded, there would very likely be one or more lengthy appeals. Given this uncertainty, a certain "bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes."  *In re Chambers Dev. Sec. Litig* ., 912 F.Supp. 822, 838 (W.D. Pa. 1995).

Balancing the complexities of this litigation, the substantial risk, expense and duration of contained litigation against CertainTeed and likely appeal if plaintiffs did prevail against CertainTeed at trial, Class counsel firmly believes the settlement represents a very good resolution of this litigation against CertainTeed.

24

Finally, there is no reason to doubt the fairness of the proposed Settlement.  The Settlement was the result of good faith, arm's-length negotiations between experienced and informed counsel on both sides.  It is well established that significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class as here.  *In re General Instruments Sec. Litig.*, 209 F.Supp. 2d 423, 431 (E.D. Pa. 2001).  There was no collusion between the negotiating parties.  The proposed Settlement does not grant unduly preferential treatment to the class representatives or to segments of the Settlement Class, and it does not provide excessive compensation to Plaintiff's counsel.  *See Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 379 (N.D. Ohio 2001).  The standards for preliminary approval are therefore met in this case.  *Id.*; *see also In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1999).

### C.    THE COURT SHOULD DIRECT NOTICE TO THE CLASS

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is <u>finally</u> approved by the Court.  The Settlement Agreement proposes notice of the Settlement to all Class members and interested parties be provided by: (a) publication by newspaper, radio, TV, and Internet.

Under Rule 23(e) and due process, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-out of the class.  *Prudential II*, 148 F.3d at 326-27; *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227 (9th Cir. 1996).  However, the Supreme Court has not held that Rule 23 or due process requires the accomplishments of delivery of actual notice to every class member in every case, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985), but the provision of "notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all." *Id.*  Nevertheless, Plaintiff's notice plan has been developed with the thought of providing the most comprehensive notice possible, and a notice that will in fact "reach" all class members.

The federal courts have sanctioned a variety of public notices to ensure that absent members are aware of the class and are capable of making an informed choice.  In the Second Circuit, the parties sought the aid of the mass media and the state governments to provide adequate notice to the absent class members.  *In Re Agent Orange Prod. Liability Litigation*, 818 F.2d 145, 169 (2nd Cir. 1987).  In the Eastern District of Pennsylvania, the federal court found that utilizing the mass media and posting notices in prisons gave adequate notice to absent class members in a civil rights action regarding the overcrowding of prisons.  *Harris v. Reeves*, 761 F. Supp. 383 (E.D. Pa. 1991).  In the Northern District of Georgia, the federal court sanctioned publication in 100 of the largest cities in the United States and through a public awareness program.  The public awareness program included new releases through the broadcast media and the print media.  *See In Re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga. 1992).  Through those sophisticated publications, the courts found Rule 23(e) and due process have been satisfied.

In this case, the notice program will include sophisticated marketing efforts to provide adequate notice to all absent class members.  The Plan will include print and internet media to provide notice to users who are not known.  Furthermore, notice will meet all necessary legal requirements and provide a comprehensive explanation of the Settlement in layman's terms.  Through these extensive efforts, absent Class members will receive adequate notice of the Settlement.  The Long Form notice which will be mailed directly to each class member for which the parties have a valid mailing address. See Exhibit C attached hereto.  The Short Form notice to be used in print ads and internet media is attached hereto as Exhibit D.  The details of the notice program are described in Exhibit B of the accompanying McShane Declaration.

Full and understandable notice is particularly important here due to the individual choices provided to each absent Class member by the Settlement.  To ensure that such full and understandable notice is provided, that the notice requirements of Rule 23 are met and that the notice provided ensures that class members' constitutional due process rights are guaranteed, Plaintiffs requests that the Court hold a pre-notice hearing prior to the dissemination of notice, to

allow for objections to or comments upon the timing, contents of method of dissemination of the proposed notice.  Holding a hearing prior to the dissemination of notice is a procedure that has been utilized in similar types of complex products liability litigation by courts within the Third Circuit to ascertain whether the notice of a classwide settlement that has been approved was sufficient prior to its dissemination. *See Carlough v. Amchem Prods., Inc.*, 158 F.R.D. 314 (E.D. Pa. 1993).  To ensure that such a pre-dissemination hearing provides meaningful opportunity for objection and comment upon the notice plan, the Plaintiffs will widely disseminate the notice, by *inter alia,* publishing the full text of the proposed notice on the Internet website that has been specially created to address questions about the Settlement and by direct mail of same to Plaintiffs' counsel as part of the distribution of the Settlement Agreement.

### D.    A FINAL FAIRNESS HEARING SHOULD BE SCHEDULED

The Court should schedule a final fairness hearing to obtain all required information to determine that class certification is proper and the settlement should be approved.  *See* MANUAL FOR COMPLEX LITIGATION, Fourth § 21.633 (2008).  The fairness hearing will provide a forum for proponents and opponents to explain, describe or challenge the terms and conditions of the class certification and settlement, including the fairness, adequacy and reasonableness of the settlement.  Accordingly, Plaintiffs request that the Court schedule the time, date, and place of the final fairness hearing.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) conditionally certifying a class action with respect to the claims against defendant CertainTeed pursuant to Fed. R. Civ. P. 23(b)(3) for the purpose of effectuating a class action settlement of certain claims against CertainTeed; (2) preliminarily approving a class settlement with CertainTeed; (3) directing notice to Class members regarding settlement of certain claims against CertainTeed on a nationwide class basis; and (4) scheduling a final fairness hearing.

Dated this December 15, 2009                    AUDET & PARTNERS, LLP


                                                /s/ Michael McShane
                                                Michael McShane
                                                221 Main Street, Suite 1460
                                                San Francisco, CA  94105
                                                Telephone:  415.568.2555
                                                Facsimile:  415.568.2556
                                                MMcsShane@audetlaw.com