## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| **IN RE: CERTAINTEED CORPORATION** | : | **MDL DOCKET NO. 1817** |
| **ROOFING SHINGLES PRODUCTS** | : | |
| **LIABILITY LITIGATION** | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |
| | : | |
| | : | |
| | : | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | : | |

## PLAINTIFFS' MOTION FOR FINAL
## <u>APPROVAL OF SETTLEMENT</u>

Plaintiffs hereby move this Court for final approval of the Settlement Agreement.

Plaintiffs incorporate Plaintiffs' Memorandum In Support Of Plaintiffs' Motion For Final

Approval Of Class Action Settlement And Certification Of A Settlement Class and

accompanying submissions as if fully set forth herein.

Respectfully submitted,


/s/ Michael McShane
Michael McShane
**Audet & Partners, LLP**
221 Main Street, Suite 1460
San Francisco, CA 94105
(415) 568-2555


Robert K. Shelquist (MN # 21310X)
**Lockridge Grindal Nauen P.L.L.P.**
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota  55401
Tel: (612) 339-6900
Fax: (612) 339-0981

Charles J. LaDuca
**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington, D.C. 20002
(202) 789-3960

*Settlement Class Co-Lead Counsel*


Arnold Levin
Charles Schaffer
**Levin Fishbein Sedran & Berman**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
(215) 592-1500

*Plaintiffs' Liaison Counsel*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

———————————————————————
                                 :

**IN RE: CERTAINTEED CORPORATION**   :          **MDL DOCKET NO. 1817**
**ROOFING SHINGLES PRODUCTS**     :
**LIABILITY LITIGATION**                     :
———————————————————————  :
                                   :
                                   :
                                   :
———————————————————————  :

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT AND**
**<u>CERTIFICATION OF A SETTLEMENT CLASS</u>**

## TABLE OF CONTENTS

I.     **INTRODUCTION**................................................................................................. 1

II.    **BACKGROUND** ................................................................................................ 2

III.   **SETTLEMENT** ................................................................................................. 5

     A.     **The Settlement Class**.................................................................................. 6

     B.     **The Settlement Benefits**............................................................................. 6

     C.     **Attorneys' Fees**........................................................................................ 8

     D.     **Claims Resolution Procedure**................................................................... 9

     E.     **Exclusion and Objection Rights** ............................................................ 10

     F.     **Enhanced Compensation for the Class Representatives** .......................... 11

     G.     **Order Preliminarily Approving the Settlement** ........................................ 12

     H.     **Class Notice of the Proposed Settlement**................................................ 12

IV.   **ARGUMENT** ................................................................................................. 14

     A.     **It is Appropriate to Certify the Settlement Class as a National Class for Purposes of the Settlement** ................................................................ 14

         1.    **The Elements of Rule 23(a) Are Satisfied in the Present Case** ................. 16

             **(a) Numerosity**........................................................................... 17

             **(b) Commonality** ....................................................................... 17

             **(c) Typicality** ........................................................................... 18

             **(d) Adequacy** ........................................................................... 21

                 i.    **The Class Has Been More Than Adequately Represented by Class Counsel** ........................................................ 22

                 ii.   **The Class Representative's Interests Are Not Antagonistic to those of the Class**.................................................... 23

         2.    **The Requirements of Rule 23(b)(3) Are Met in the Settlement Context** . 23

     B.     **The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved by the Court**............................................................. 26

**C.**      **The Settlement is Entitled to an Initial Presumption of Fairness** ............ 29

**D.**      **The Settlement Satisfies All of the Relevant *Girsh* Criteria for Approval** ...................................................................................... 31

    **1.**  **The Complexity, Expense and Likely Duration of the Litigation** ............ 32

    **2.**  **The Reaction of the Class to the Settlement** ................................................ 33

    **3.**  **The Stage of the Proceeding and Amount of Discovery Completed** ........ 34

    **4.**  **The Risks of Establishing Liability and Proving Damages and Maintaining the Class Action through Trial** ................................................ 35

    **5.**  **The Ability of the Defendants to Withstand a Greater  Judgment** .......... 37

    **6.**  **The Range of Reasonableness of the Settlements in Light of the Best Possible Recovery and in Light of All of the Attendant Risks of Litigation** ...................................................................................... 39

**E.**      **The Notice Plan Satisfied the Requirements of the Federal Rules of Civil Procedure** ...................................................................................... 40

**V.**      **CONCLUSION** ...................................................................................... 44

# TABLES OF AUTHORITIES

**Cases**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................... 14, 24, 34

*Atena Inc. Sec. Litig.*, No Civ. A. MDL1219, 2001 WL 20928, (E.D. Pa. Jan. 4, 2001). 39

*Austin v. Pa. Dept. of Corp.*, 876 F. Supp. 1437 (E.D. Pa. 1985) .................................... 26

*Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994) ........................................................ 18, 19

*Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998) ...................................... 16

*Bell Atl. Corp. v. Bolger,* 2 F.3d 1304 (3d Cir. 1993)................................................. 28, 35

*Boggs v. Divested Atomic Corp.* 141 F.R.D. 58 (S.D. Ohio 1991)................................... 20

*Bogosian v. Gulf Oil Corp.*, 561 F.2d 434 (3d Cir. 1977) ............................................... 19

*Bradburn Parent Teacher Store, Inc. v. 3M,* 513 F. Supp. 2d 322 (E.D. Pa. 2007)... 27, 28

*Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799 (3d Cir. 1974)................................... 27

*Bullock v. Kircher*, 84 F.R.D. 1 (D.N.J. 1979) ................................................................ 27

*Carson v. Am. Brands, Inc.,* 450 U.S. 79 (1981) ............................................................. 27

*Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992) .................................... 26

*Collins v. Pension Benefit Guaranty Corp.*, No. CA 88-3406-AER, 1996 WL 335346
   (D.D.C. June 7, 1996) ................................................................................................... 43

*Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993)....................................... 22

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977)........................................................ 30, 39

*Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136 (E.D Pa. 2000)................................ 43

*Day v. NLO, Inc.*, 144 F.R.D. 330 (S.D. Ohio 1992), *vacated in part on other
   grounds*, 5 F.3d 154 (6th Cir. 1993) ............................................................................ 20

*Dietrich v. Bauer,* 192 F.R.D. 119 (S.D.N.Y. 2000) ...................................................... 23

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985), *cert. denied*, 424 U.S. 946 (1985).. 14

*Equal Rights Center v. Washington Metro. Area Tr. Auth.* , 573 F. Supp. 2d 205, 122
   n.10 (D.D.C. 2008) ....................................................................................................... 44

*Fisher Brothers v. Phelps Dodge Industries, Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ..... 31

*General Tel. Co. v. Falcon,* 457 U.S. 147 (1982) ................................................................. 19

*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147 (1982) ............................... 19

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975) ................................................ 26, 28, 32, 35

*Grassy v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987) ................................................................................................................................. 21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. 14

*Hannahan v. Britt*, 174 F.R.D. 356 (E.D. Pa. 1997) .......................................................... 29

*Harris v. Reeves*, 761 F. Supp. 383 (E.D. Pa. 1991) .......................................................... 41

*Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978) ................................. 24

*Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912 (3d Cir. 1992) ....................... 21

*Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979) ........................................................ 17

*In re Agent Orange Product Liability Litigation,* 818 F.2d 145 (2d Cir. 1987) ......... 18, 41

*In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D. Pa. 1984 ............................. passim

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2003 WL 23316645 (E.D. Pa. Sep. 5, 2003) ................................................................................................... 29

*In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2007 WL 4570918 (E.D. PA Dec. 28, 2007) ...................................................................................... 28, 33, 43

*In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979), cert denied, 452 U.S. 905 (1981) ............................................................................................................... 14

*In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327 (D.N.J. 2002) .......... 38

*In re Cendant Corp. Litig.*, 264 F3d. 201, 232 n.18 (3d Cir. 2001) ............................ passim

*In re Chambers Dev. Sec. Litig .*, 912 F. Supp. 822 (W.D. Pa. 1995) ........................ 32, 36

*In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659 (D.Minn. 1974) ......................................................................................................... 31

*In Re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga. 1992) ......... 42

*In re Federal Skywalk Cases*, 95 F.R.D. 483 (W.D. Mo. 1982) ........................................ 20

*In re First Commodity Corp. of Boston Customer Accts. Litig.*, 119 F.R.D. 301 (D. Mass. 1987) ................................................................................................ 27

*In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768 (3d Cir. 1995) passim

*In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631 (E.D. Pa. 2003) .............. 29, 33, 43

*In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180 (D.N.J. 2008) .............................. 21

*In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79 (E.D. Pa. 2003) ........... 21

*In re Plastic Tableware Antirust Litig.*, Civ. A. No. 94-CV-3564, 2002 WL 188569 (E.D. Pa. Dec. 4, 1998) ............................................................................... 43

*In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697 (M.D. Pa. 2008) ................................................................................................ 28, 33

*In re Prudential Ins. Co. Of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) .................................................. passim

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 202, 205 (S.D.N.Y 1995) . 14, 26

*In re Remeron Direct Purchaser Antitrust Litig.* No. Civ. 03-0085 FSH, 2005 WL 2230317 (D.N.J. Sept. 13, 2005) ................................................................ 27

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003) .................................. 39

*In re Revco Sec. Litig.,* Nos. 851, 89CV593, 1992 U.S. Dist. LEXIS 7852, (N.D. Ohio May 6, 1992) ........................................................................................... 43

*In re So. Ohio Corr. Facility*, 175 F.R.D. 270 (S.D. Ohio 1997) ..................................... 43

*In re Telectronics Pacing Systems*, 172 F.R.D. 271 (S.D. Ohio 1999) ........... 18, 19, 20, 24

*In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 (3d Cir.2003) ........... 26, 28, 29

*Knell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999) ............................................. 25

*Kuhn v. Philadelphia Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978) ................................ 18

*Lachance v. Harrington,* 965 F. Supp. 630 (E.D. Pa. 1991) ............................................. 35

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994) .................................... 29

*Lazy Oil v. Witco Corp.,* 95 F. Supp. 2d 290 (W.D. Pa. 1997) .................................. 38, 39

*Lewis v. Curtis,* 671 F.2d 779 (3d Cir. 1982) ................................................................. 22

*Mack v. Suffolk County,* 191 F.R.D. 16 (D. Mass. 2000) ................................................ 18

*Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677 (7th Cir. 1987).... 28

*Marsden v. Select Medical Corp.*, 246 F.R.D. 480, (E.D. Pa. 2007) ................................ 17

*Meijer, Inc. v. 3M*, Civ. N. 04-5871, 2006 WL 2382718 (E.D. Pa. Aug. 14, 2006)... 27, 42

*Newman v. Stein*, 464 F.2d 689 (2d Cir. 1972) ................................................................. 28

*Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 259 F.3d 154 (3d Cir. 2001) ..... 24

*Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105 (E.D. Pa. 2005) ................................... 35

*Petruzzi's, Inc. v. Darling-Deleware Co., Inc.*, 880 F. Supp. 292 (M.D. Pa. 1995) ......... 28

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) .................................................... 41

*Prandini v. National Tea Co.,* 557 F.2d 1015 (3d Cir. 1977) ............................................. 8

*Pyke v. Cuomo,* 209 F.R.D. 33 (N.D.N.Y. 2002) ............................................................. 17

*Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181 (N.D. Ill. 1992) ...................... 19

*Scott v. University of Delaware,* 601 F.2d 76 (3d Cir. 1979) ........................................... 19

*Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977) ........................... 18

*Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988) ............................... 20

*Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115 (3d Cir. 1990) ............................................. 26

*Tenuto v. Transworld Systems, Inc.,* Civ. A. No. 99-4228, 2002 WL 188569 (E.D. Pa. Jan. 31, 2002) ................................................................................................................. 43

*Valentino v. Carter-Wallace*, *Inc.*, 97 F.3d 1227 (9th Cir. 1996) ..................................... 41

*Walsh v. Great Atl. & Pac. Tea Co., Inc.,* 726 F.2d 956 (3d Cir. 1983) .................... 26, 28

*Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527 (W.D. Pa. 1994) ................................... 14

*Weinberger v. Kendrick*, 698 F.2d 61 (2d Cir. 1982) ...................................................... 29

*Weiss v. York Hospital*, 745 F.2d 786 (3d Cir. 1984) ................................................. 19, 22

*West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710 (S.D.N.Y. 1970) ....................... 36

*Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975) .................................... 16, 22

*Williams v. First Nat'l Bank,* 216 U.S. 582 (1910) ......................................................... 27

*Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705 (D. Ariz. 1993) .................................. 17

*Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86 (3d Cir. 1985) .... 42

**Statutes**

Fed. R. Civ. P. 23(a) ......................................................................................... 16

Fed. R. Civ. P. 23(b)(3)...................................................................................... 24

Fed. R. Civ. P. 23(e) ................................................................................... 26, 40

**Treatises**

2 NEWBERG ON CLASS ACTIONS, §7.24 ........................................................... 22

WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE, CIVIL 2D, §1754 ........... 25

Plaintiffs respectfully submit this memorandum in support of their Motion for Final Approval of Class Action Settlement, certification of the proposed Settlement Class,[1] approving a separate award for named plaintiffs, and entering final judgment. This motion will be based on this memorandum, the accompanying declarations, all related memoranda and declarations previously submitted for consideration at the June 8, 2010 final approval hearing, the presentations of counsel at the hearing before this Court, and the Order dated December 29, 2009, preliminarily approving the Settlement.[2] For the reasons stated, the Court should grant final approval of the proposed settlement of this class action, certify the proposed Settlement Class, approve a separate award for named plaintiffs, and enter final judgment.

## I.    INTRODUCTION

On December 29, 2009, this Court preliminarily approved the Settlement between the parties, conditionally certified a class, and authorized Lead Counsel to disseminate notice to the Settlement Class. Accordingly, notice was disseminated in accordance with the approved plan and the Federal Rules of Civil Procedure.

Class Counsel respectfully submits that the terms of the Settlement are eminently fair, adequate, and reasonable for the Class and that the requirements for final approval are satisfied. In addition, the proposed Settlement Class satisfies the criteria for class

---

[1] The Settlement Class is defined as "all individuals and entities that own, as of the date of this Agreement, homes, residences, buildings, or other structures located in the United States or Canada whose roofs contain or contained roofing shingles made with a felt reinforcement base material that is saturated with asphalt, also known as organic roofing shingles manufactured by CertainTeed after July 1, 1987; all individuals and entities who previously owned such a building and who, prior to the date of this Agreement, sold or transferred the building and at the time of the sale or transfer retained the right to make a claim for the shingles pursuant to a valid documented assignment; and all individuals and entities who owned such a building and who, between August 1, 2006, and the Effective Date of this Agreement, have settled or settle their warranty claims for such shingles" (E.D. Pa. 2:07-md-01817 Docket Document No. ("Dkt.") 123 ¶ 4.)

[2] On May 4, 2010, Class Counsel submitted a separate application for an award of attorneys' fees and costs.

certification under Rule 23 of the Federal Rules of Civil Procedure; and the notice to prospective Class members comported with due process and Rule 23, both as to its content and as to the method of notice dissemination. Plaintiffs respectfully request that the Court: (i) grant final approval of the proposed Settlement; (ii) certify the Settlement Class pursuant to the provisions of Fed. R. Civ. P. 23(b)(3); (iii) award attorney fees and costs; (iv) approve a separate award for named plaintiffs; and (v) enter final judgment

## II.    BACKGROUND

Beginning in the fall of 2005, several of the law firms prosecuting this litigation were contacted by class members because of problems they were having with the defective roofing shingles which later became the subject of this litigation.  Thereafter, counsel commenced their investigation into the product and the claimed defect; including retaining experts for the purpose of forensic testing.  Class counsel researched the applicable legal standard for this product defect litigation and the applicable standards for nation-wide and state-wide class certification.  Having satisfied themselves both that the product in question was likely a systemic design failure, rather than a one-off manufacturing defect, and that the anticipated legal challenges, while substantial, could be met, Counsel commenced the litigation. (Shelquist Decl., ¶19.)

The first federal filing was the *Barrett* action in this Court on September 15, 2006. Thereafter, CertainTeed faced numerous lawsuits relating to the premature degradation and failure of CertainTeed Organic Roofing Shingles.  Eventually, twenty-one class actions, including one in state court, were filed in courts throughout the country.[3] Given

---

[3]      Catherine Barrett v. CertainTeed Corp., C.A. No. 2:06-4117 (E.D. Pa.); Board of Directors of the Lake Katherine Townhouse Association, Inc. v. CertainTeed Corp., C.A. No. 09-3535 (N.D. Ill.); Richard Bobbie, Jr., et al. v. CertainTeed Corporation, et al., C.A. No. 2:06-4835 (D.N.J.); Gerald Brenden, et al. v. CertainTeed Corp., C.A. No. 0:06-3579 (D. Minn.); David Butz, et al. v. CertainTeed Corp., C.A. No. 2:06-

the multitude of pending cases, on February 16, 2007, all related federal litigation was consolidated before this Court by the Judicial Panel Multi-District Litigation.  (Shelquist Decl., ¶24.)

The large number of cases filed against CertainTeed presented Class Counsel with the challenge of organizing the more than two dozen law firms identified as counsel of record in the twenty-one cases on file.  Through an arduous and often contentious self-ordering process, Class Counsel were eventually able to overcome their differences and agreed to move forward under the leadership structure later approved by this Court.

During the course of this litigation, Class Counsel were given access to an estimated one million pages of documents and analyzed hundreds of thousands of those pages that were imaged during the productions, and taken and defended numerous depositions. In addition, Class Counsel have retained nationally-recognized product defect experts, incurred significant costs relating to the forensic testing and analysis of the organic shingles and performed numerous on-site property inspections. In short, Class Counsel have aggressively prosecuted the claims against the Defendant. (*See* Shelquist Decl., ¶¶35, 36, 41-44.)

---

14357 (E.D. Mich.); Carl Chiacchierini, et al. v. CertainTeed Corp., C.A. No. 07-6210 (W.D.N.Y.); Dean Conrad, et al. v. CertainTeed Corp., C.A. No. 4:06-420 (S.D. Iowa); Frank J. Crocco, et al. v. CertainTeed Corp., C.A. No. 07-1373 (N.D. Ohio); Roger Dunker, et al. v. CertainTeed Corp., C.A. No. 2:06-4243 (E.D. Pa.); Frederic Eldridge, et al. v. CertainTeed Corp., C.A. No. 1:07-38 (D.N.D.); Richard Elliot, et al. v. CertainTeed Corp., C.A. No. 01:08-252 (S.D.Ohio); Tina Fitzner, et al. v. CertainTeed Corp., C.A. No. 3:06-488 (W.D. Ky.); Reva Gross, et al. v. CertainTeed Corp., C.A. No. 09-4029 (D.S.D.); Dawn Lynn Johnson, et al. v. CertainTeed Corp., C.A. No. 1:06-4864 (N.D. Ill.); Billy C. Harper, et al. v. CertainTeed Corp., C.A. No. 3:04-cv-00400 (E.D. Tenn.); Jack Helmick, et al. v. CertainTeed Corp., C.A. No. 8:07-00222 (D. Neb.); Nancy Hollis, et al. v. CertainTeed Corp., C.A. No. 3:06-525 (W.D. Wis.); Bert Robinson, et al. v. CertainTeed Corp., C.A. No. 07-12 (S.D. Ill.); Thomas Rybarczyk, et al. v. CertainTeed Corp., C.A. No. 1:07-576 (S.D. Ill.); Scott Swinehart, et al. v. CertainTeed Corp., C.A. No. 06-4469 (E.D. Pa.); Kevin Venhaus, et al. v. CertainTeed Corp., C.A. No. 07-1189 (S.D. Iowa).

The litigation has also produced significant law and motion practice before this Court, including motions involving discovery disputes, disagreement between the parties regarding communications with class members and Plaintiffs' motion for class certification.

After significant litigation had taken place, the parties commenced settlement negotiations in February of 2008. These negotiations, which included the exchange of numerous written offers and counter-offers, several in-person meetings in Philadelphia and countless telephone conferences, were conducted contemporaneously with the ongoing discovery process. The hard fought nature of these negotiations is demonstrated by the fact that it took nineteen months from the start of settlement discussions for the parties to reach a settlement.

In the end, the parties' determined and good-faith efforts to resolve the litigation resulted in a fair settlement which provides substantial benefits to Class members and presents a meaningful solution to an intractable legal problem. If approved, the proposed Settlement will bring an end to the hard fought litigation on terms which provide tangible and reasonable benefits to both sides.

On December 29, 2009, this Court entered an Order (a) preliminarily approving the Settlement; (b) certifying a Settlement Class for purposes of Settlement; (c) appointing Catherine Barrett, Roger Dunker, and Sherwood Wolfson to serve as Settlement Class Representatives; (d) reaffirmed the appointment of Michael McShane of Audet & Partners, LLP, Charles LaDuca of Cuneo, Gilbert & LaDuca, and Robert Shelquist of Lockridge Grindal Nauen P.L.L.P. as interim lead counsel and Arnold Levin of Levin, Fishbein, Sedran & Berman as Liaison Counsel; (e) approving the form and

manner of notice proposed by Plaintiffs; and (f) scheduling a Fairness Hearing for June 8, 2010.

### III.    SETTLEMENT

The proposed Settlement offers a substantial all cash recovery to Class members and does so through a claims process that does not unduly burden Class members. (*See* Declaration of Matthew Hanson in Support of Defendant's Joinder to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement ("Hanson Decl."))  Class members will receive a cash payment based primarily on the amount of CertainTeed Organic Shingles installed on their property and the length of time the shingles have been on the roof. The Settlement includes an appeals process and annual reporting of the progress of the claims process to Class Counsel. The Settlement treats all similarly situated Class members fairly and equally, as the recovery of every Class Member is based on the amount of CertainTeed Product they own or owned, the existence of a warranty, and the length of time since product was installed. As structured, the settlement ensures that a Class member with a greater number of damaged Shingles will receive a higher payment than a Class member with fewer Shingles, but that similarly situated Class members will receive the same amount of money per shingle. Class Counsel are all extremely experienced in class action litigation as well as the settlement and claims process and believe that the proposed Settlement is a fair, adequate, and reasonable settlement and highly beneficial to the Class. *See* curriculum vitae of the Lead and Liaison Counsel Firms, Declaration of Michael McShane in Support of Class Counsel's Joint Petition for Fees and Expenses, Exs. C-1, C-4, C-7 and C-10.).

**A.     The Settlement Class**

The "Settlement Class" includes

> All individuals and entities that own, as of the date of this
> Agreement, homes, residences, buildings, or other
> structures located in the United States or Canada whose
> roofs contain or contained roofing shingles made with a felt
> reinforcement base material that is saturated with asphalt,
> also known as organic roofing shingles manufactured by
> CertainTeed after July 1, 1987; all individuals and entities
> who previously owned such a building and who, prior to
> the date of this Agreement, sold or transferred the building
> and at the time of the sale or transfer retained the right to
> make a claim for the shingles pursuant to a valid
> documented assignment; and all individuals and entities
> who owned such a building and who, between August 1,
> 2006, and the Effective Date of this Agreement, have
> settled or settle their warranty claims for such shingles.[4]

(Shelquist Decl. Ex. 1, ¶ 2.1.)

The Settlement Class is estimated to include the owners of approximately
1,800,000 structures with the subject roofing shingles. (Aff. of Dale Walton, Dkt. 119-4 ¶
4.)  It is estimated that approximately 55,700,000 squares of organic asphalt shingles
were sold during the relevant time period of 1987-2005.[5]  (*Id.*)

**B.     The Settlement Benefits**

Class members will be provided with cash compensation calculated primarily by
determining the amount of Shingles installed on their property, how long the Shingles
have been on the property, and whether or not they previously made a claim and accepted
a payment for damage to the Shingles.

---

[4] Approximately seven-tenths of one percent (.007%) of the shingles were sold in Canada. CertainTeed has
chosen to provide notice of the settlement and the settlement benefits to all Canadian claimants under the
same terms as the United States Claimants in light of a single action having been filed against it in Ontario.

[5]  The subject roofing shingles are generally sold by the "square."  A "square" consists of enough shingles
to cover a ten foot by ten foot area of roof, or 100 square feet.

The Settlement establishes a claims process whereby owners of Shingles that have failed will obtain compensation under one of three categories: (1) those who own or owned faulty Shingles that are still under warranty will obtain compensation of $74 per square; (2) owners of Shingles that have failed but are out of warranty will obtain compensation of $34 per square; and (3) those who resolved warranty claims with CertainTeed on or after August 1, 2006, and have executed a release in favor of CertainTeed will receive 20% of the difference between the amount received on the warranty claim and the amount that would have been received in the absence of a release. The payments under each of the categories will be reduced on a *pro rata* basis to reflect the actual usage a class member received from the roof, but for warranty holders only after the roof has been on the structure for ten years. (Shelquist Decl. Ex. 1, §6.)

In addition, the settlement before this Court provides the following:

- o Each individual class member, few of whom could afford to litigate this case on their own, may file a claim that could provide a cash benefit to that class member. Notably, even for those persons who previously and freely signed a release on their individual claims, compensation has been made available;

- o A ready-made settlement structure with no limit on how much money CertainTeed has to pay over the claims period;

- o A claims period lasting 25 years;

- o A presumption of compensation for 100% of a roof plane if the building owner can show only 5% of the shingles are damaged as defined in the settlement, even if the claimant has enjoyed the uninterrupted usage of the roof for 20 years or more. This benefit far exceeds the warranty benefit which applies only to those materials which are defective;

- o Does not reduce the value of the Class Members claim in any amount for attorney's fees or costs;

- o Full opt-out rights for those Class Members who want to pursue individual claims;

- o Does not settle any claims for damage to the other parts of the structure, limit or shorten the length of any existing warranty or settle personal injury claims; and

- o An appeal process for Class Members to challenge the Claim Administrator's determination.

Class Counsel have estimated the value of the settlement to be $719 to $783 million. The basis for this valuation is set forth in Class Counsel's May 4, 2010, application for attorneys' fees and is incorporated by reference herein. (*See* Class Counsel's Petition for Fees and Expenses, pp. 13-22.)

### C.    Attorneys' Fees

Attorneys' fees and costs for Class Counsel are subject to approval by the Court and will be paid separately by CertainTeed in addition to any relief granted to Plaintiffs and Settlement Class members. As noted above, on May 4, 2010, Class Counsel submitted their request for attorneys' fees and expenses to this Court for consideration.

The requested fee amount is in addition to the relief Defendant will provide to the Class under the terms of the Settlement, and will in no way reduce any Class member's recovery. The enforceability of the Settlement Agreement is not contingent on the amount of attorneys' fees or costs awarded. (Shelquist Decl. at ¶ 75.) The parties did not discuss the amount of attorneys' fees and costs until after all of the material terms of the settlement were agreed upon. (Shelquist Decl. at ¶ 74.)  *See Prandini v. National Tea Co.*, 557 F.2d 1015, 1021 (3d Cir. 1977) (Prandini I "supervisory rule announced requirement that, in settlement of cases with statutorily authorized attorneys' fees, the damage settlement in favor of Plaintiffs should be made first and separate from award of fees.")

### D.        Claims Resolution Procedure

The claims period for this settlement is twenty-five years in duration.   The Settlement Agreement provides that Class Members who wish to participate in the settlement may submit a Claim Form at any time prior to the expiration of their existing warranty or, if no warranty exists as they are a prior releaser, within twelve months of this settlement becoming final.[6] Copies of the Claim Forms agreed to by the parties are attached hereto as Shelquist Decl. Exs. 2 and 3. Claim Forms will be provided to Class Members upon request by CertainTeed, and will be submitted to CertainTeed. Alternative methods of obtaining a claim form are through calling a toll-free number and from the internet through a settlement website which will provide a user friendly method for downloading claim forms.

If a claim is considered deficient in any manner, a claimant will be given written notification of the deficiency and afforded three opportunities to properly complete an application. If the claim is ultimately denied in whole or in part after the final attempt, Class Counsel will be notified and will review the appropriateness of the denial. (*See* Shelquist Decl, Ex. 1 at ¶ 4.13.) The claimant will then have the right to appeal the denial to an Independent Claims Administrator (hereafter "ICA"), who will be agreed to by both Class Counsel and CertainTeed, or in the absence of agreement, shall be appointed by the Court. (*Id*. at ¶¶ 4.18, 4.19.)

The claimant, CertainTeed or Class Counsel may also request that an Independent Inspector visit the subject structure to independently evaluate the claim. (*Id*. at ¶ 4.20.)

---

[6]  Notice of the Settlement was disseminated beginning on January 28, 2010. As a result, claims have been coming in since the first week in February. Assuming this Court gives final approval to this settlement in June and the settlement becomes final on or about August 1, 2010, then class members without a warranty or who have previously released their claims will effectively have nineteen months to make a claim.

The decision by the ICA must be in writing, and is non-appealable. However, if Class Counsel concludes that the ICA's decision is not consistent with the terms of the Settlement Agreement, the claim may be presented for review to a Special Master, who will be appointed by the Court. The decision by the Special Master is also non-appealable. (*Id* at Section 5.)

Furthermore, Class Counsel has the right to independently audit the work of the ICA and any and all claim files. (*Id*. at ¶ 4.22.) In addition, for the duration of the twenty-five year claims period, CertainTeed must submit an annual report identifying all claims paid, the amount paid and the claims denied. (*Id*. at ¶ 4.33.)

Collectively, the three opportunities to correct deficient claims, an appeal right, the availability of an ICA, an Independent Inspector, a Court-appointed Special Master, annual reports, Class Counsel's audit rights and this Court's continuing jurisdiction over the process ensure that the claims process will be administered fairly and according to the terms of the settlement.

### E.    Exclusion and Objection Rights

Every member of the Settlement Class was provided with the opportunity to opt-out of the Settlement Class. (Shelquist Decl. Ex. 1, ¶ 10.1.)  The opt-out period deadline was May 11, 2010, and as of that date Class Counsel received 695 opt-out requests. However, since then this Court during an on-the-record, telephonic hearing was informed that 593 of the opt-outs will be withdrawn, leaving 102 remaining opt-outs.[7]

---

[7]  The 593 class members who initially excluded themselves from the settlement are all represented by attorney James Capretz and several other law firms which collectively refer to themselves as the "Capretz Group." On May 24, 2010, Mr. Capretz and several other members of the Capretz Group, along with certain Class Counsel and counsel for CertainTeed appeared telephonically before this Court. At that time, Mr. Capretz stated that each of the 593 opt outs are returning to the settlement and each of the 357 objectors also represented by Mr. Capretz are withdrawing all of their objections, subject to filing written confirmation with the Court.  (*See* Shelquist Decl. at ¶¶ 64-67.)

Class members were also given an opportunity to file an objection to the Settlement, and 442 objections were received by the April 26, 2010, deadline. However, since then, this Court was informed during an on-the-record, telephonic hearing that 357 of the objections will be withdrawn, leaving a total of eighty-five. *See, supra,* n. 7. (Shelquist Decl. Ex. 1, ¶ 10.8.)

Collectively, the remaining 102 exclusion requests and eighty-five objections represent only about 0.01% of the class, and the lack of a significant number of either objections or opt-outs speaks to the value and the fairness of the settlement and lends further support to giving the settlement final approval.

Class Counsel will, at a later date and pursuant to the schedule established by the Court, present a detailed report addressing the remaining objections.

### F.     Enhanced Compensation for the Class Representatives

The parties have agreed that each individual identified as a representative plaintiff in one of the actions pending before this Court as part of the MDL will receive enhanced compensation for their efforts. These individuals include Gilbert Anderson, Catherine Barrett, David Butz, Roger Dunker, Jack Helmick, Frederic G. Eldridge, Reva Gross, Roger Luft, Thomas Rybarczyk, William Simpson, Pat Nagy Swartz, Sherwood Wolfson, and Carole Venhaus. (Shelquist Decl. Ex. 1, ¶ 7.2.)  Named Plaintiffs John Cassidy, Elizabeth Cumming, and Nancy Hollis will provide CertainTeed with samples of the shingles on their buildings so that CertainTeed may determine whether those shingles are CertainTeed Organic Shingles. (*Id*.)  If the Named Plaintiff was deposed, he or she will receive an incentive payment of $5,000; if the named Plaintiff was not deposed, he or she will receive an incentive payment of $2,500.

### G.      Order Preliminarily Approving the Settlement

On December 29, 2010, this Court preliminarily approved the Settlement and authorized Lead Counsel to disseminate notice of the Settlement to the Class. (Dkt. 123.)

In the Order preliminarily approving the Settlement, the Court found that "enough information has been presented to support the conclusion that there are no obvious deficiencies in the proposed Settlement Agreement, that the proposed Class satisfies the class action requirements set forth in the Federal Rules of Civil Procedure 23(a) and (b) for purposes of a Settlement Class only, and that Settlement Class Members should be notified of the proposed Settlement . . ." (Dkt. 123 ¶ 2.) In approving the plans of Notice, the Court found that the proposal was "found to be the best notice practicable under the circumstances and constitutes due and sufficient Notice of the Settlement Agreement and the Final Approval Hearing to the Settlement Class and all person entitled to receive such Notice as potential Settlement Class Members." (Dkt. 123 ¶ 11.)

### H.      Class Notice of the Proposed Settlement

The Settlement Agreement provides a comprehensive plan by which notice of the Settlement was to be disseminated to prospective Class members by U.S. Mail, electronic mail, television and Internet publication. Specifically, the Settlement Agreement prescribes a campaign by which CertainTeed, at its own expense, would disseminate the Notice to prospective Class members by First Class U.S. mail and/or by electronic mail ("email"). (*See* Shelquist Decl. Ex. 1.) The Settlement further provides that Class Counsel, through the Claims Administrator, shall establish and maintain the website www.CertainTeedShingleSettlement.com, at which the Notices and claim forms were

posted to provide notice to the Class of the proposed Settlement. (*See* Shelquist Decl. Ex. 1.)

Pursuant to the Settlement Agreement, all costs of notice and claims administration were paid by CertainTeed. The initial claims administration will be undertaken by CertainTeed. (Shelquist Decl. Ex. 1, ¶ 4.32.) The parties agreed to provide members of the Settlement Class with notice in accordance with the Notice Plan, along with the form of Direct Mail Notice and Publication Notice. (*See* Shelquist Decl. Ex. 1, § 9; Exs. 4 (short form notice for print media), 5 (script for televised notice), 6 (internet notice), 7 (long form notice with standard claim form), 8 (long form notice with abbreviated claim form), 9 (press release regarding settlement)).

The notice plan previously approved by this Court has been fully implemented. Beginning on January 28, 2010, the Court appointed notice provider, CAC Services Group, LLC, ("CAC") mailed the approved Notice to each of the specifically identified Class members for whom CertainTeed had a valid address, by U.S. mail. On February 19, 2010, CAC emailed the approved Notice to those prospective Class members who had contacted Lead Counsel and other attorneys for information throughout the process of this litigation. In conjunction with the direct and email notices, CAC also commenced advertising on the internet, in print media (magazines), trade journals and on television. Prior to the June 8, 2010, fairness hearing before this Court a full report regarding the notice plan will be submitted on behalf of CAC by CertainTeed.

In addition, the Claims Administrator has developed and hosted the website www.CertainTeedShingleSettlement.com, at which the Notice and other related documents were posted to provide notice and information to the Settlement Class of the

proposed Settlement. The website was active on or about January 28, 2010, and will be available throughout the claims period to provide information and assistance to Class members.

## IV.  ARGUMENT

### A.  It is Appropriate to Certify the Settlement Class as a National Class for Purposes of the Settlement

The benefits of the proposed Settlement can be realized only through the certification of a settlement class. The Supreme Court of the United States has now emphatically confirmed the viability of such settlement classes. *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997). So, too, have the federal appeals courts. *See e.g., In re Prudential Ins. Co. Of Am. Sales Practices Litig.*, 148 F.3d 283 (3d Cir. 1998), *cert. denied*, 525 U.S. 1114 (1999) ("Prudential II"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998). In this Circuit, there is a preference for class certification: "The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985), *cert. denied*, 424 U.S. 946 (1985)*; see also Walsh v. Pittsburgh Press Co.*, 160 F.R.D. 527 (W.D. Pa. 1994) (Ambrose, J.) (same). In the case of settlements, "tentative or temporary settlement classes are favored when there is little or no likelihood of abuse, and the settlement is fair and reasonable and under scrutiny of the trial judge." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 202, 205 (S.D.N.Y 1995)(*quoting In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 174 (5th Cir. 1979), cert denied, 452 U.S. 905 (1981)). Here, there is no likelihood of abuse of the class action device, and the settlement is fair, reasonable and adequate and is subject to approval by the Court.

14

Rule 23 governs the issue of class certification, whether the proposed class is a litigation class or, as here, a settlement class. All the criteria for certification of a class for litigation purposes, except manageability, apply to certification for settlement purposes. Thus, a settlement class should be certified where the four requirements of Rule 23(a) numerosity, commonality, typicality, and adequacy are satisfied and when one of the three subsections of Rule 23(b) is met. Certification of the proposed Settlement Class is appropriate here as it is requested to effectuate a settlement of claims against CertainTeed. Given the fact that over 1.8 million property owners in the United States have CertainTeed Organic Shingles installed on their properties, there is no question that the numerosity requirement is met. The commonality and typicality requirements also are easily satisfied, as the claims of the Class representatives and all Class members are premised on the same theories of breach of warranty, strict liability, and negligence in the design, manufacture, testing, marketing, distributing and putting into the stream of commerce defective CertainTeed Organic Shingles. Further, adequacy of representation is assured as the Class is represented by legal counsel who have a wealth of experience in complex product liability litigation such as this, and there is no conflict between the interests of the class and the class representatives.

Certification of the Class under Rule 23(b)(3) for settlement of compensatory damages claims also is appropriate because all of Plaintiffs' claims for compensatory relief are premised upon the predominating common issue of CertainTeed's conduct in marketing, manufacturing, and distributing the Shingles. There is no danger that individual variations in the type or magnitude of damage suffered by individual Class members will affect predominance, as the Class representatives have the same type of

damages and seeks the same type of relief as members of the proposed Class. Moreover, resolution of the litigation by a class settlement is superior to individual adjudication of the Class members' claims for compensatory relief. In particular, the Settlement provides members of the Class with an ability to obtain predictable, certain, and definite compensatory relief promptly and contains well-defined administrative procedures to assure due process in the application of the Agreement to each individual claimant, including the right to "opt-out." By contrast, individualized litigation carries with it great uncertainty, risk, and costs and provides no guarantee that the injured Class member will obtain necessary and timely compensatory relief at the conclusion of the litigation process. Settlement also would relieve judicial burdens that would be caused by repeated adjudication of the same issues in thousands of individualized trials against CertainTeed.

### 1.    The Elements of Rule 23(a) Are Satisfied in the Present Case

In order for a lawsuit to be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, the named Plaintiffs must establish each of the four threshold requirements of Subsection (a) of the Rule, which provides:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). See, e.g., *Barnes v. American Tobacco Co.*, 161 F.3d 127 (3d Cir. 1998); *In re Prudential Ins. Co. Am. Sales Practice Litig. ("Prudential II")*, 148 F.3d 283, 308-09 (3d Cir. 1998); *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239 (3d Cir. 1975). Here, all four elements are plainly satisfied in this circumstance.

### (a)     Numerosity

Rule 23(a)(1) requires that the proponent of a class action demonstrate that "the class is so numerous that joinder of all members is impracticable."  Numerosity is not determined solely by the size of the class, but also by the geographic location of class members. *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 484 (E.D. Pa. 2007).

In the present case, Plaintiffs seek certification of a Settlement Class of virtually all persons who own property with CertainTeed Organic Shingles manufactured since July 1, 1987 in the United States. There are several hundred thousand Class Members geographically dispersed throughout the United States. (Shelquist Decl.  ¶  3.) Approximately 55,700,000 squares of organic asphalt shingles were sold during the relevant time period of 1987-2005, and in Defendant's estimation there are approximately 1,857,000 structures were fitted with these shingles. (Aff. of Dale Walton, Dkt. 119-4 ¶ 4.)  "[A] class comprised of 4,000 members is obviously numerous, and renders joinder impracticable." *Pyke v. Cuomo,* 209 F.R.D. 33, 41 (N.D.N.Y. 2002). There cannot be any dispute, therefore, that the proposed Class meets the numerosity requirement.

### (b)     Commonality

Rule 23(a)(2) requires a showing of the existence of "questions of law or fact common to the class." A common question is one which "arises from a common nucleus of operative facts regardless of whether the underlying facts fluctuate over the class period and vary as to individual claimants." *In re Asbestos School Litigation*, 104 F.R.D. 422 (E.D. Pa. 1984); *Yslava v. Hughes Aircraft Co.*, 845 F. Supp. 705 (D. Ariz. 1993). The rule does not require that all questions be common or even that common questions predominate. *Hummel v. Brennan*, 83 F.R.D. 141 (E.D. Pa. 1979); *Kuhn v. Philadelphia*

*Electric Co.*, 80 F.R.D. 681 (E.D. Pa. 1978). Plaintiffs are not required to show that all class members' claims are identical to each other, and any difference between the proposed class members, "while arguably relevant as defenses to liability, do not change the fact that this class action raises the same basic claim and shares common questions of law." *Mack v. Suffolk County,* 191 F.R.D. 16, 23 (D. Mass. 2000). Indeed, a single common question is sufficient to satisfy the requirements of Rule 23(a)(2). *See Prudential II*, 148 F.3d at 310; *In re Telectronics Pacing Systems* 172 F.R.D. 271 at 280).; *Asbestos School Litigation*, 104 F.R.D. at 429; *Simon v. Westinghouse Electric Corp.*, 73 F.R.D. 480 (E.D. Pa. 1977); *see also In re Agent Orange Product Liability Litigation,* 818 F.2d 145 (2d Cir. 1987).

Applying these principles, it is evident that the commonality requirement of subsection (a)(2) is easily met here. The central issues posed by this litigation are the defective nature of the CertainTeed Organic Shingles, specifically, the likelihood that they will degrade and fail well before the expiration of their warranted life. Given the presence of these common questions central to this litigation, Rule 23(a)(2)'s requirement for the existence of common questions of fact or law has been met here.

### (c)    Typicality

Rule 23(a)(3) requires that the claims of the class representatives be "typical of the claims . . . of the class." As the Third Circuit described in *Baby Neal v. Casey*, 43 F.3d 48 (3d Cir. 1994):

> The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented. [Citation omitted.] The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with

those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the claims of the absentees. [Citation omitted].

Typicality entails an inquiry whether 'the named plaintiff's individual circumstances are markedly different or. . . the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based.' [Citations omitted.] Commentators have noted that cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims. [Citation omitted.]

*Id.* at 57-58.

The requirement of this subdivision of the rule, along with the adequacy of representation requirement set forth in subsection (a)(4), is designed to ensure that the interests of unnamed class members will be protected adequately by the named class representative. *See e.g., General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147 (1982); *Prudential II,* 148 F.3d at 311; *Bogosian v. Gulf Oil Corp.,* 561 F.2d 434 (3d Cir. 1977); *Asbestos School Litigation,* 104 F.R.D. at 429-30. The measure of whether a plaintiff's claims are typical is whether the nature of the plaintiff's claims, judged from both a factual and a legal perspective, are such that in litigating his or her personal claims he or she reasonably can be expected to advance the interests of absent class members. *See, e.g.,* *General Tel. Co. v. Falcon,* 457 U.S. 147 at 156-157 (1982); *Weiss v. York Hospital,* 745 F.2d 786 (3d Cir. 1984); *Scott v. University of Delaware,* 601 F.2d 76 (3d Cir. 1979); *Telectronics,* 172 F.R.D. at 280. The typicality requirement has been liberally construed by the federal courts. *See, e.g., Scholes v. Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D. Ill. 1992).

In product liability cases such as this, individual variations among the class representatives and class members concerning such matters as magnitude of injury to a

property and the like do not defeat a finding of typicality because they are not germane to the "factual and legal issues of a defendant's liability [which] do not differ dramatically from one Plaintiff to the next." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188 (6th Cir. 1988); ac*cord, e.g., Telectronics*, 172 F.R.D. at 280; *Asbestos School Litigation*, 104 F.R.D. at 430; *In re Federal Skywalk Cases*, 95 F.R.D. 483 (W.D. Mo. 1982) (Rule 23(b)(3) mass tort class certified; "egregiousness of a class [representative's] injuries is irrelevant" to typicality); *Day v. NLO, Inc.*, 144 F.R.D. 330 (S.D. Ohio 1992), *vacated in part on other grounds*, 5 F.3d 154 (6th Cir. 1993) (The Court held that the "important question is to what extent those differences, when compared to the nature and extent of the shared characteristics of the named Plaintiffs and class members' claims, will defeat the court's ability to achieve a considerable efficiency through collective adjudication of those claims.")(quoting *Boggs v. Divested Atomic Corp.* 141 F.R.D. 58 at 65 (S.D. Ohio 1991)).

In the present case, individual variations among Class members do not render the named representative Plaintiffs' claims atypical of those of the Class. The claims of the representative Plaintiffs and each of the Class members are predicated on the premature failure of CertainTeed Organic Shingles. CertainTeed's liability for the resulting damage to each Class member does not depend on the individual circumstances of the Class members. Rather, the Complaint alleges that defendant's conduct in manufacturing, promoting, and selling CertainTeed Organic Shingles was unlawful and gives rise to liability to all persons who, like the named Plaintiffs, experienced failure of the Shingles prior to the expiration of their warranted life. In order to prevail, therefore, the named Plaintiffs and each member of the Class will be required to make the same factual

presentation and legal argument with respect to the common questions of liability cited earlier, regardless of the individual circumstances which may affect their ability to prove individual causation and amount of damages on an individualized basis. Accordingly, the common issues necessarily share "the same degree of centrality" to the named representative's claims such that in litigating the liability issues the named Plaintiffs reasonably can be expected to advance the interests of all absent Class members in a favorable determination with respect to each such issue. "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members and if based on the same legal theory." *Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 923 (3d Cir. 1992); *Grassy v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123 (3d Cir. 1987).

Even if there are "pronounced factual differences among the plaintiffs, typicality is satisfied as long as there is a strong similarity of legal theories and the named plaintiff does not have any unique circumstances." *In re Microcrystalline Cellulose Antitrust Litig.*, 218 F.R.D. 79, 84 (E.D. Pa. 2003); *see also In re Mercedes-Benz Antitrust Litig.*, 213 F.R.D. 180, 185 (D.N.J. 2008)("[W]hile the Court must ensure the interest of the plaintiffs are congruent the Court will not reject the Plaintiffs' claim of typicality on speculation regarding conflicts that may arise in the future.") Accordingly, the typicality requirement of the rule is easily satisfied.

### (d)      Adequacy

The final requirement of Rule 23(a) is set forth in subsection (a)(4), which requires that "the representative parties will fairly and adequately protect the interests of the class." The Third Circuit consistently has ruled that:

> Adequate representation depends on two factors: (a) the Plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation; and (b) the Plaintiffs must not have interests antagonistic to those of the class.

*Weiss,* 745 F.2d at 811 (quoting *Wetzel v. Liberty Mutual Insurance Co.*, 508 F.2d at 247); *see also* Prudential *II,* 148 F.3d at 312. These two components are designed to ensure that absentee class members' interests are fully pursued.

### i.   The Class Has Been More Than Adequately Represented by Class Counsel

The existence of the elements of adequate representation are presumed and "the burden is on the defendant to demonstrate that the representation will be inadequate." *Asbestos School Litigation,* 104 F.R.D. at 430, citing *Lewis v. Curtis,* 671 F.2d 779 (3d Cir. 1982); *Cook v. Rockwell Int'l Corp.*, 151 F.R.D. 378 (D. Colo. 1993) (quoting 2 NEWBERG ON CLASS ACTIONS, §7.24 at pp. 7-81, 2-82).

In the present case, the presumption of adequate representation cannot be rebutted. With respect to the issue of adequacy of counsel, the Court may take judicial notice of the fact that Class Counsel have substantial experience in litigating mass tort class actions and complex product liability cases, this Court has previously reviewed the credentials of Class Counsel, and appointed the undersigned firms as co-lead and liaison, respectively. Class Counsel have been lead counsel in numerous complex class action cases. Class Counsel have and will continue to aggressively litigate this case. Counsel have taken significant discovery that has enabled them to negotiate an advantageous settlement on behalf of the class. Class Counsel negotiated the proposed Settlement from a position of knowledge and strength, and as advocates for the entirety of the Class. The adequacy requirement is satisfied for certification.

### ii.  The Class Representative's Interests Are Not Antagonistic to those of the Class

There is nothing to suggest that the representative Plaintiffs have significant interests antagonistic to those of the absent Class members in the vigorous pursuit of the Class claims against CertainTeed. *See Dietrich v. Bauer,* 192 F.R.D. 119, 126 (S.D.N.Y. 2000) ("gauging the adequacy of representation requires an assessment whether the class representatives have interests antagonistic to those of the class they seek to represent"). Here, both the Class representatives and Class members are equally interested in detailing to the Court and a jury the defective nature of CertainTeed Organic Shingles, and are further committed to obtaining appropriate compensation from CertainTeed. They have obtained an advantageous settlement that treats all Class members in the same fashion, does not provide them with any special benefit or preference and provides real value to all.

Having demonstrated that each of the mandatory requirements of Rule 23(a) are satisfied here, Plaintiffs now turns to consideration of the factors which, independently, justify class treatment of this action under subdivision 23(b)(3) of the rule.

### 2.  The Requirements of Rule 23(b)(3) Are Met in the Settlement Context

In addition to satisfying Rule 23(b), plaintiffs must show that each putative class falls under at least one of the three subsections of Rule 23(b). Here, the settlement class qualifies under Rule 23(b)(3). Under 23(b)(3) a class action may be maintained if:

> [T]he court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B)

the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623; *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.,* 259 F.3d 154, 187 (3d Cir. 2001). Common questions must predominate over individual questions. The Court must find that "the group for which certification is sought seeks to remedy a common legal grievance." *Hochschuler v. G.D. Searle & Co.*, 82 F.R.D. 339 (N.D. Ill. 1978). Rule 23(b)(3) does not require that all questions of law or fact be common. *See Telectronics*, 172 F.R.D. 287-88 (S.D. Ohio 1999). In this regard, courts generally focus on the liability issues and if these issues are common to the class, common questions are held to predominate over individual questions. *See id.*

Here, Plaintiffs raise common issues of fact and law that predominate over any individual issues that might arise. The Class members' claims for compensatory relief are founded upon common legal theory related to the singular issue of CertainTeed's designing, creating, manufacturing, testing, marketing, distributing and/or selling defective CertainTeed Organic Shingles. Thus, Class members have an interest in the adjudication of what is by far and away the single issue of law and fact dominate this litigation – e.g., whether or not the subject Organic Shingles are defective. Once that issue is determined on a class-wide basis, the remaining issues focus on relatively minor

matters such as the size of a Class member's roof and how long the roof has been on the structure.

The other requirement of Rule 23(b)(3) that must be satisfied is the superiority requirement (i.e., that a class action suit provides the best way of managing and adjudicating the claims at issue). "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." *In re The Prudential Ins. Co. of America Sales Practices Litig., Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998), *cert. denied, Knell v. Prudential Ins. Co. of Am.*, 525 U.S. 1114 (1999). Considerations of judicial economy underscore the superiority of the class action mechanism in this case. *See Prudential II*, 148 F.3d at 316 n.57. Settlement on a class basis also is superior to individual litigation and adjudication because settlement provides Class members with prompt compensation for their damages. By contrast, compensation resulting from litigation is highly uncertain and may not be received before lengthy trial and appellate proceedings are complete. In addition, the Settlement obviously removes the overwhelming and redundant costs of individual trials.

Accordingly, the Settlement Agreement renders a class action superior to other potential avenues of recovery for Plaintiffs and the Class. Therefore, this case presents the paradigmatic example of a dispute that can be resolved to effectuate the fundamental goals of Rule 23: (1) to promote judicial economy through the efficient resolution of multiple claims in a single action; and (2) to provide persons with smaller claims, who would otherwise be economically precluded from doing so, the opportunity to assert their rights. WRIGHT, MILLER & KANE, FEDERAL PRACTICE & PROCEDURE, CIVIL 2D §1754. At

the same time, the Settlement fully preserves the due process rights of each individual plaintiff seeking compensatory damages.

In sum, the requirements of Rule 23(b)(3) are satisfied and certification of a the proposed Class is appropriate.

**B.     The Proposed Settlement is Fair, Reasonable, and Adequate and Should be Approved by the Court**

The proposed settlement of a class action should be approved in accordance with Fed. R. Civ. P. 23(e) where, as here, it is "fair, reasonable and adequate." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F. 3d 283, 316 (3d Cir. 1998); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); *Walsh v. Great Atl. & Pac. Tea Co., Inc.,* 726 F.2d 956, 965 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

It is well-established that there is an overriding public interest in resolving litigation through settlement and this is particularly true in class actions. *See In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516 at 534-535 (3d Cir. 2003); *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 784 (3d Cir. 1995)(holding that 'the law favors settlement, particularly in class actions and other complex cases where substantial judicial resource can be conserved by avoiding formal litigation."); *Austin v. Pa. Dept. of Corp.*, 876 F. Supp. 1437, 1455 (E.D. Pa. 1985)(explaining that "the extraordinary amount of judicial and private resources consumed by massive class action litigation elevates the general policy of encouraging settlements to "an overriding public interest."); *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268 (9th Cir. 1992); *In re Prudential Sec. Inc. Limited Partnership Litig.,* 163 F.R.D. 200 (S.D.N.Y. 1995). Federal courts have repeatedly and consistently recognized

a universal and long-standing "strong" public policy favoring the settlement of civil actions. *See e.g. Carson v. Am. Brands, Inc.,* 450 U.S. 79, 88 n.14 (1981); *Williams v. First Nat'l Bank,* 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts. . . "); *See also Bradburn Parent Teacher Store, Inc. v. 3M,* 513 F. Supp. 2d 322, 327 (E.D. Pa. 2007)(noting that "the law generally favors settlement in complex or class action cases for its conservation of judicial resources."); *Meijer, Inc. v. 3M,* No. 04-5871, 2006 WL 2382718, at *9 (E.D. Pa. Aug. 15, 2006) ). (same).

The parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial. *See In re First Commodity Corp. of Boston Customer Accts. Litig.*, 119 F.R.D. 301, 306-07 (D. Mass. 1987). These economic gains multiply when settlement also avoids the costs of litigating class status -- often a complex litigation within itself. Furthermore, a settlement may represent the best method of distributing damage awards to injured Plaintiffs, especially where litigation would delay and consume the available resources and where piecemeal settlement could result in the complete exhaustion of defendant's resources.

Recognizing that a settlement represents an exercise of judgment by the negotiating parties, courts have consistently held that the function of a judge reviewing a settlement is neither to rewrite the parties' settlement agreement nor to try the case by resolving the issues the settlement leaves unresolved. *In re Remeron Direct Purchaser Antitrust Litig.* No. Civ. 03-0085 FSH, 2005 WL 2230317, at *16 (D.N.J. Sept. 13, 2005); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 534-35 (D.N.J. 1997), *aff'd*, 148 F.3d. 283 (3d Cir. 1998); *see Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 804 (3d Cir. 1974); *Bullock v. Kircher*, 84 F.R.D. 1, 4 (D.N.J. 1979).

Thus, "'[t]he temptation to covert a settlement hearing into a full trial on the merits must be resisted.'" *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1315 (3d Cir. 1993) (quoting *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 684 (7th Cir. 1987)). District courts have broad discretion when determining whether to approve a proposed class action settlement. *See, e.g., In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535; *Girsh v. Jepson*, 521 F.2d 153, 156 (3d. Cir. 1975); *In re Pressure Sensitive Labelstock Antitrust Litig.*, 584 F. Supp. 2d 697, 700 (M.D. Pa. 2008); *Bradburn Parent Teacher Store, Inc*., 513 F. Supp. 2d at 326. Although the district court has broad discretion, significant weight should be attributed to the belief of experienced counsel that settlement is in the best interests of the class. *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2007 WL 4570918, at *3 (E.D. PA Dec. 28, 2007); *Petruzzi's, Inc. v. Darling-Deleware Co., Inc.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995).

Courts take a common sense approach toward approval of class action settlements that fall within a "range of reasonableness."  *See Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972) (noting that the range of reasonableness with respect to a settlement "recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.")  The district court should guard against demanding too large a settlement because a settlement is a compromise –the yielding of the highest hopes in exchange for certainty and resolution. *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 806. This Court is asked to determine only whether the Settlement is within a range that reasonable and experienced attorneys could accept, considering all the relevant risks and factors of litigation. *See Walsh v. Great Atl. & Pac. Tea Co., Inc.,* 96 F.R.D. 632, 642 (D.N.J.

1983), *aff'd*, 726 F.2d 956 (3d. Cir. 1983); *see also Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982).

### C.    The Settlement is Entitled to an Initial Presumption of Fairness

A district court should "apply an initial presumption of fairness when reviewing a proposed settlement where: "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F3d. 201, 232 n.18 (3d Cir. 2001)).

These four elements are met here. First, the record demonstrates that the negotiations occurred at arm's length. Settlements negotiated by experienced counsel that results from arm's-length negotiations are generally entitled to deference from the court. *In re Auto. Refinishing Paint Antitrust Litig.*, 2003 WL 23316645 at *6 (E.D. Pa. Sep. 5, 2003); *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 640 (E.D. Pa. 2003)(holding that "[a] presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel," *citing Hannahan v. Britt*, 174 F.R.D. 356, 366 (E.D. Pa. 1997); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994)(giving "due regard to the recommendations of the experienced counsel in this case, who have negotiated this settlement at arms-length and in good faith"). This deference reflects the understanding that vigorous negotiations between seasoned counsel protect against collusion and advance the fairness consideration of Rule 23(e). The settlement with CertainTeed is the result of almost four years of litigation and nineteen months of hard-fought, arm's-length negotiations between

29

class counsel and CertainTeed counsel, all experienced and capable lawyers. (Shelquist Decl., ¶¶45-48.) Class Counsel and CertainTeed' counsel vigorously advocated their respective client's positions in the settlement negotiations and were prepared to litigate the case fully if no settlement was reached. The proposed Settlement does not grant unduly preferential treatment to the class representatives or to segments of the Settlement Class, and it does not provide excessive compensation to Plaintiff's counsel. In fact, the parties have left it to this Court to make the appropriate attorneys' fee and cost award to Class Counsel.

Second, Plaintiffs' Counsel have taken substantial discovery. Only after Class counsel reviewed and analyzed approximately one million pages of documents, conducted numerous corporate depositions, and after plaintiff class representatives were deposed and inspections of plaintiffs' shingles conducted, was the settlement reached. Nothing in the course of the negotiations or in the substance of the proposed Settlement presents any reason to doubt its fairness.

Third, the Settlement was negotiated on behalf of the Plaintiffs by a negotiating team of several Plaintiffs' counsel who vigorously prosecuted the class cases against CertainTeed and are experienced in similar litigation. (*See* McShane Decl in Support of Class Counsel's Petition for Fees and Expenses, Exs. C-1, C-4, C-7 and C-10.)

The fairness of the settlement process and of the Settlement Agreement itself also was shaped by the experience and reputation of counsel, an important factor in final approval of class action settlements. *See In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 787-88; *Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659

(D.Minn. 1974) ("The recommendation of experienced antitrust counsel is entitled to great weight."); *Fisher Brothers v. Phelps Dodge Industries, Inc.,* 604 F. Supp. 446 (E.D. Pa. 1985) ("The professional judgment of counsel involved in the litigation is entitled to significant weight."). This Settlement was negotiated by experienced counsel in complex class action litigation. Accordingly, the Settlement was not the produce of collusive dealings, but, rather, was informed by the vigorous prosecution of the case by the experienced and qualified counsel. This Court has previously considered the qualifications of Class Counsel, and has twice now appointed the undersigned as Lead and Liaison Counsel, respectively.

Fourth, objections were due April 26, 2010, and to date, only 442 objections have been received, of which 357 have been withdrawn pursuant to on-the-record statements to this Court by their counsel. (Shelquist Decl., ¶¶64-65.) This represents only a small fraction of the estimated 1.8 million Class Members.

For the above reasons, the proposed Settlement is entitled to an initial presumption of fairness.

### D.      The Settlement Satisfies All of the Relevant *Girsh* Criteria for Approval

There are nine factors a court should consider to determine if a settlement should be approved as "fair, reasonable and adequate." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 785. These factors include: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceeding and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater

judgment; (8) the range of reasonableness of the settlement fund in light of the best

possible recovery; and (9) the range of reasonableness of the settlement fund to a possible

recovery in light of all the attendant risks of litigation. *See Girsh*, 521 F.2d at 157

### 1.   The Complexity, Expense and Likely Duration of the Litigation

The first factor "captures 'the probable costs,' in both time and money of

continued litigation." *In re Cendant*, 264 F.3d at 233 (quoting *In re GMC Pick-Up Truck*

*Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 812).

> The Court must balance the Proposed settlement against the time and
> expense of achieving a potentially more favorable result through further
> litigation. Where the complexity, expense and likely duration of the
> litigation are significant, the Court will view this factor as weighing in
> favor of settlement.

*Lenahan,* 2006 WL 2085282, at *12 (citing *In re Prudential Ins. Co. of Am. Sales*

*Practices Litig.,* 962 F. Supp. at 536).

Continued litigation would be long, complex and expensive, and a burden to

Court dockets. Continuing this litigation against CertainTeed would entail a lengthy and

expensive battle, involving legal and factual issues specific to CertainTeed. It is

reasonable to expect that all such matters would be sharply disputed and vigorously

contested, as they were in settlement negotiations. Additionally, CertainTeed would

assert various defenses, and a jury trial (assuming the case proceeded beyond pretrial

motions) might well turn on class questions of proof making the outcome of such trial

uncertain for both parties. Moreover, even after trial is concluded, there would very likely

be one or more lengthy appeals. Given this uncertainty, a certain "bird in the hand in this

litigation is surely worth more than whatever birds are lurking in the bushes." *In re*

*Chambers Dev. Sec. Litig .*, 912 F. Supp. 822, 838 (W.D. Pa. 1995).

Approval of this Settlement will guarantee the Class a substantial cash payment. Without approval of the Settlement, Plaintiffs would face the likely prospect of expensive and protracted litigation against CertainTeed. Balancing the complexities of this litigation, the substantial risk, expense and duration of contained litigation against CertainTeed and likely appeal if plaintiffs did prevail against CertainTeed at trial, Class counsel firmly believes the settlement represents a very good resolution of this litigation against CertainTeed.

### 2.    The Reaction of the Class to the Settlement

The second factor "attempts to gauge whether members of the class support the settlement."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F.3d. at 318. The fact that an overwhelming majority of the Class has not filed objections to the Settlement "strongly militates a finding that the settlement is fair and reasonable." *In re Pressure Sensitive Labelstock,* 584 F. Supp. 2d at 701 (quoting *In re Linerboard Antitrust Litig.,* 321 F. Supp. 2d 619, 629 (E.D. Pa. 2004)); *see In re Cendant*, 264 F.3d at 235 ("The vast disparity between the number of potential class members who received notice of the Settlement and the number of objectors creates a strong presumption that this factor weighs in favor of the Settlement."); *In re Auto. Refinishing Paint Antitrust Litig.*, 2007 WL 4570918, at *4 ("The fact that an overwhelming majority of the Class did not file objections is a significant element to consider in determining the overall fairness of the Settlements.")[8]

---

[8]    Even when some class members object to a proposed class settlement, it is neither uncommon nor fatal to settlement approval. In fact, numerous class settlements have been approved over objections from many class members. *See, e.g. Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118-19 (3d Cir. 1990) (holding that 29 objections in the 281-member class "strongly favors settlement."); *Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 803 (3d Cir. 1974) (affirming approval of settlement even though more than 20% of the class objected).

Class Notice required objections by April 6, 2010. In response to the Notice, Class Counsel has recorded 442 objections by this deadline. However, as noted above, 357 of these objections have been withdrawn pursuant to on-the-record representations to this Court by their counsel. This number represents less than 0.01% of the potential Class members, estimated at over 1.8 million. As such, this factor favors approval.

### 3. The Stage of the Proceeding and Amount of Discovery Completed

The third factor "'captures the degree of case development that the class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.'" *In re Cendant,* 264 F.3d at 235 (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 813).

As detailed herein above, after a lengthy pre-filing investigation and protracted litigation, Class Counsel entered settlement negotiations with CertainTeed. The negotiations were wide-ranging and adversarial, involving numerous in-person meetings and countless telephone conferences taking place over a nineteen month period. These negotiations were conducted by experienced and knowledgeable counsel, who had the benefit of the wealth of fact discovery and expert opinions.

Thus, the concern noted in *Amchem* – concerning the vulnerability of a settlement claim where the parties had not been put to the test of a vigorous adversarial process in shaping their position at the bargaining table, *Amchem*, 521 U.S. at 601 & 620 – is not at issue here. To be sure, Class Counsel conducted extensive discovery. Settlement was achieved only after nearly four years of litigation in this Court. As noted above, Class Counsel undertook extensive discovery, filed and defended multiple discovery motions,

filed a motion for class certification, participated in the depositions of witnesses for both Defendants and Plaintiffs. Through this process, Lead Counsel obtained an understanding of key issues that allowed counsel to evaluate the strength and weaknesses of the claims.

As the Third Circuit observed, "post-discovery settlements are more likely to reflect the true value of the claim and be fair." *Bell Atl. Corp.* 2 F.3d at 1314. Lead Counsel has devoted significant time and work investigating the Class's claims. Through a length discovery process, negotiations were handled with a strong understanding of the merits of their legal and factual contentions. Thus, given the status of the litigation, this factor favors final approval.

### 4. The Risks of Establishing Liability and Proving Damages and Maintaining the Class Action through Trial

The fourth through sixth factors "examine what the potential rewards (or downside) of the litigation might have been had class counsel elected to litigate the claims rather than settle them." *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 814. The factors include (4) the risks of establishing liability; (5) the risks of establishing damages; and (6) the risks of maintaining the class action through trial. *Girsh*, 521 F.2d at 157. As one court explained:

> In examining [the risks of establishing liability], the Court need not delve into the intricacies of the merits of each side's arguments, but rather may "give credence to the estimation of the probability of the success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action."

*Perry v. FleetBoston Fin. Corp.*, 229 F.R.D. 105, 115 (E.D. Pa. 2005)(quoting *Lachance v. Harrington,* 965 F. Supp. 630, 638 (E.D. Pa. 1991)). "It is known from past experience that no matter how confident one may be of the outcome of litigation, such confidence is

often misplaced." *West Virginia v. Chas. Pfizer & Co.,* 314 F. Supp. 710, 743-44 (S.D.N.Y. 1970), *aff'd*, 440 F.2d 1079 (2d Cir. 1971)

Lead Counsel believe that they would prevail at trial, but recognize that complex litigation against large companies with able defense counsel has inherent risks. In ongoing litigation, Defendants would continue to raise certain defenses that they have previously argued ardently, including that Plaintiff's claims are barred by the Economic Loss Doctrine, claims are limited or excluded by CertainTeed's limited warranties, and damages suffered by Plaintiffs were caused by the acts, omissions, and/or conduct of third parties. (Dkt. #27 ¶¶ Second, Eleventh, and Fourteenth Affirmative Defenses). CertainTeed also put forth the affirmative defenses that the prerequisites to maintaining a class do not exist for various reasons, and would, if needed, do everything in their power to prevent Plaintiffs from attaining class certification. (Dkt. #27 ¶¶ Seventh-Ninth Affirmative Defenses). Also, CertainTeed has alleged that Plaintiffs who had previously settled a warranty claim, other litigation, or received payments from Defendant would be barred in whole or in part by reason of Release. (Dkt. #27 ¶¶ Fourth Affirmative Defense) Here, under the proposed Settlement, these Class members who executed a release in favor of CertainTeed are still entitled to participate and receive payments.

Moreover, assuming that Class Plaintiffs overcame the hurdles of proving liability, Class Plaintiffs would still be faced with providing the appropriate amount of damages against Defendants. In this context, "[a] very large bird in the hand in this litigation is surely worth more than whatever birds are lurking in the bushes." *In re Chambers Dev. Sec. Litig* ., 912 F. Supp. 822, 838 (W.D. Pa. 1995).

The risks of litigation faced by the Class are amply demonstrated by the substantial affirmative defenses set forth by Defendants.

Key events in this case date back over approximately 23 years to 1987. Many class members have enjoyed the uninterrupted use of this product for over twenty years. With the passage of time, key documents have become unavailable. This passage of time has prevented Class Counsel from obtaining comprehensive documents required to accelerate the discovery process, formulate legal theories, and prosecute their case.

The risk of maintaining the Class through trial also favors approval of the Settlements. A class had not yet been certified in this litigation, and while Lead Counsel are confident that a class would have been certified, they are also convinced that Defense Counsel would have fought aggressively to prevent class certification. Through this motion practice the Class faced substantial delays, costs, and risks without the proposed Settlement.

In sum, risks of establishing liability, establishing damages, and maintaining the class action through trial favors final approval

### 5. The Ability of the Defendants to Withstand a Greater Judgment

The seventh factor "is concerned with whether the defendants could withstand a judgment for an amount significantly greater than the Settlement." *In re Cendant*, 264 F.3d at 240. Before entering into the proposed Settlement, Lead Counsel engaged in extensive arms-length negotiations with CertainTeed. Lead Counsel believe that Plaintiffs have obtained the last dollar available in settlement and that CertainTeed was unwilling to settle for anything more.

In any event, a court "is not in an advantageous position to gauge the ability of the Settling Defendants to pay a larger judgment" and as "'there is inevitably a measure of speculation involved in this determination,'" given the "'built-in limitations of this analysis,'" this factor should be weighed only moderately in this analysis. *In re Cendant Corp. Derivative Action Litig.*, 232 F. Supp. 2d 327, 336 (D.N.J. 2002)(quoting *In re Cendant Corp. Litig.*, 264 F.3d at 241). The fact that a defendant has the financial resources to pay a larger judgment does not necessarily weigh against approval of a settlement when considered along with the substantiality of the settlement within the context of the litigation. For example, In *Lazy Oil*, the district court concluded that the fact that a settling defendant had the financial resources to pay a larger judgment did not weigh against settlement "in light of the risks that Plaintiffs would not be able to achieve any greater recovery at trial." *Lazy Oil v. Witco Corp.,* 95 F. Supp. 2d 290, 318 (W.D. Pa. 1997).

Here, the uncertainties present in the current economic climate further support approval of the settlements. CertainTeed has agreed to pay substantial sums to the Class which provides the Class with certainties in a time when the economy presents extreme risks in every industry beyond the control of either party. Even if Class Plaintiffs had proceeded to trial and won, and then prevailed in appeals, a successful collection of the full judgment is not a certainty in any case. This holds especially true in this case against a building materials company such as CertainTeed, who manufactures and sells products for residential and commercial construction, two industries that have been hardest hit by the economic downturn.

In light of these facts, including the real possibility of recovering less or nothing at all, this factor weighs in favor of final approval.

> **6.    The Range of Reasonableness of the Settlements in Light of the Best Possible Recovery and in Light of All of the Attendant Risks of Litigation**

Both the eighth and ninth *Girsh* factors evaluate the reasonableness of the Settlement. "While the court is not obligated to ensure that the proposed settlement is in the best interest of the class members by reference to the best possible outcome, it must also recognize that settlements typically represent a compromise and not hold counsel to an impossible standard." *In re Atena Inc. Sec. Litig.*, No Civ. A. MDL1219, 2001 WL 20928, at *6 (E.D. Pa. Jan. 4, 2001); *See also In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d at 806 (noting that "after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution"); *Lazy Oil*, 95 F. Supp. 2d at 338-39 (stating that a court "should not make a proponent of a proposed settlement 'justify each term of the settlement against a hypothetical or speculative measure of what concessions might have been gained; inherent in compromise is a yielding of absolutes and abandoning of highest hopes.'")(quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). In addition, "a future recovery, even one in excess of the proposed settlement, may ultimately prove less valuable to the class than receiving the benefits of the proposed Settlement at this time." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 501 (W.D. Pa. 2003).

Lead Counsel have concluded that the Settlement results in a significant portion of potentially recoverable damage from CertainTeed. As the size of a potential Class

member's roof increases, so does the cost of potential replacement, but most importantly, so does the total recovery under the Settlement.

Class members are dealing with roofs that must be replaced or repaired in the near future to prevent further damage to their roofs and other functioning parts of their structures. The timing of this Settlement that brings certainty and resolution to Class members who will receive payments at a time when temperatures across the country allow contractors or class members to replace or repair the roofs on their structures.

In light of the foregoing, the Settlements are fair, reasonable, and adequate. Given the history and posture of this case, as well as the litigation risks discussed above, the Settlements will bring an end to this litigation and provide a substantial recovery and relief to a Class that has been waiting for resolution of their claims for years.

### E.    The Notice Plan Satisfied the Requirements of the Federal Rules of Civil Procedure

Under Fed. R. Civ. P. 23(e), class members are entitled to notice of any proposed settlement before it is finally approved by the Court. In accordance with preliminary approval, notice of the Settlement was provided to all Class members and interested parties by U.S. Mail, electronic mail, publication by newspaper, radio, TV, and Internet at www.CertainTeedShingleSettlement.com. Full and understandable notice was vital in this Plan due to the individual choices provided to each absent Class member by the Settlement. A Long Form notice was mailed directly to each class member for which the parties had a valid mailing address. A Short Form notice was used in print ads and internet media. The details of the notice program are described in the Shelquist Declaration that accompanies Plaintiffs' final approval brief. The details of the actual

execution of the notice plan will be described in the Declaration submitted by the Court-appointed notice provider, CAC Group.[9]

Under Rule 23(e) and due process, adequate notice must be given to all absent class members and potential class members to enable them to make an intelligent choice as to whether to opt-out of the class. *Prudential II*, 148 F.3d at 326-27; *Valentino v. Carter-Wallace*, *Inc.*, 97 F.3d 1227 (9th Cir. 1996). However, the Supreme Court has not held that Rule 23 or due process requires the accomplishments of delivery of actual notice to every class member in every case, *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985), but the provision of "notice reasonably certain to reach most of those interested in objecting is likely to safeguard the interests of all." *Id.* Nevertheless, Plaintiff's notice plan has been developed with the thought of providing the most comprehensive notice possible, and a notice that will in fact "reach" all class members.

The federal courts have sanctioned a variety of public notices to ensure that absent members are aware of the class and are capable of making an informed choice. In the Second Circuit, the parties sought the aid of the mass media and the state governments to provide adequate notice to the absent class members. *In Re Agent Orange Prod. Liability Litigation*, 818 F.2d 145, 169 (2d Cir. 1987). Here in the Eastern District of Pennsylvania, the Court found that utilizing the mass media and posting notices in prisons gave adequate notice to absent class members in a civil rights action regarding the overcrowding of prisons. *Harris v. Reeves*, 761 F. Supp. 383 (E.D. Pa. 1991). In the Northern District of Georgia, the court sanctioned publication in 100 of the largest cities in the United States and through a public awareness program. The public awareness

---

[9]  The CAC Group Declaration will be submitted by CertainTeed.

program included new releases through the broadcast media and the print media. *See In Re Domestic Air Transp. Antitrust Litigation*, 141 F.R.D. 534 (N.D. Ga. 1992). Through those sophisticated publications, the courts found Rule 23(e) and due process have been satisfied. As part of its analysis of the Settlement, the Court must determine whether the Notice was adequate. *See Meijer, Inc. v. 3M*, Civ. N. 04-5871, 2006 WL 2382718 at *9 (E.D. Pa. Aug. 14, 2006). Here, the requirements of both the Federal Rules of Civil Procedure and dues process have been fulfilled. The notice plainly satisfies the content requirement. As noted above, the notice plan approved by this Court was successfully executed and included electronic, direct mail, print media and television advertising. Thus, the parties' efforts to disseminate the notice were more than adequate. *Id.* at *10; *see Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 90 (3d Cir. 1985)("First-class mail and publication consistently have been considered sufficient to satisfy the notice requirements of Rule 23(d)(2) and Rule 23(e) for advising class members.")

### F.    Named Plaintiffs are entitled to a Separate Award for Their Efforts

Class Counsel recommend that the Court approve incentive awards to the 16 (could change if three below don't have organic shingles) certified class representatives Gilbert Anderson, Catherine Barrett, David Butz, Roger Dunker, Jack Helmick, Reva Gross, Frederic G. Eldridge, Roger Luft, Thomas Rybarczyk, William Simpson, Pat Nagy Swartz, Sherwood Wolfson, Carole Venhaus, John Cassidy, Elizabeth Cumming, and Nancy Hollis (will determine if these three have organic shingles). The parties request an incentive award of $5,000.00 if the named Plaintiff was deposed and $2,500 if the named Plaintiff was not deposed.

"Courts routinely approve incentive awards to compensate named plaintiffs for the service they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 145 (E.D Pa. 2000)(quoting *In re So. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)). "Incentive awards are typically awarded to class representatives for their often extensive involvement with a lawsuit and courts in this Circuit have traditionally granted requests for these awards." *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008)(granting incentive awards totaling $30,000.00 to each class representative; Court noted: "The Class Representatives not only conferred benefits on all of the Class members, but also risked jeopardizing their existing relationships with their suppliers of automotive refinishing paint products."). It is particularly appropriate to compensate class representatives with incentive awards where, as here, they have actively assisted Class Counsel in their prosecution of the litigation for the benefit of a class. *See Tenuto v. Transworld Systems, Inc.,* Civ. A. No. 99-4228, 2002 WL 188569, at *5 (E.D. Pa. Jan. 31, 2002); *see also In re Linerboard,* 2004 WL 1221350, at *18 ("[T]he call representatives have conferred benefits on all other class members and they deserve to be compensated accordingly"); *In re Plastic Tableware Antirust Litig.*, Civ. A. No. 94-CV-3564, 2002 WL 188569 (E.D. Pa. Dec. 4, 1998).

Courts recognize that serving as a named plaintiff involves a "substantial time commitment to the litigation." *In re Revco Sec. Litig.,* Nos. 851, 89CV593, 1992 U.S. Dist. LEXIS 7852, at *21 (N.D. Ohio May 6, 1992). This commitment can require "investments of . . . money and effort." *Collins v. Pension Benefit Guaranty Corp.*, No. CA 88-3406-AER, 1996 WL 335346, at *6 (D.D.C. June 7, 1996); *see also Equal Rights*

43

*Center v. Washington Metro. Area Tr. Auth.* , 573 F. Supp. 2d 205, 122 n.10 (D.D.C. 2008) (stating that when deciding he proprietary of incentive awards, the court may consider factors such as the amount of time and efforts plaintiffs expended in aiding litigation.).

Class Counsel believe, based on their assessment of the facts and circumstances of this case, that the incentive awards in the amount recommended in the Settlement Agreement are warranted.

The class representatives in this case worked closely with Class Counsel throughout the investigation, prosecution and settlement of the claims in this litigation. Their participation in this litigation directly contributed to the benefits to the class as a whole. Each stepped forward to prosecute the claims on behalf of the class and accepted burdens and disruptions attendant to complex litigation in order to benefit the Class. Among other things, the class representatives reviewed the complaints and other litigation documents, provided discovery, and some sat for depositions lasting several hours. In short, the class representatives committed significant time to this litigation on behalf of the Class.

The Notice to Class Members informed them that named plaintiffs would be entitled to incentive awards in accordance with the Settlement Agreement in the amount of $5,000.00 if the named Plaintiff was deposed and $2,500 if the named Plaintiff was not deposed.

## V.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an Order: (1) granting final approval; (2) certifying a class action with respect to the claims

against defendant CertainTeed; (3) awarding attorney fees and costs in the amount of $37.5 million; (4) approving a separate award for named plaintiffs in the amount of $5,000.00 if the named Plaintiff was deposed and $2,500 if the named Plaintiff was not deposed; and (5) entering final judgment. The Settlement is the result of extensive arms-length negotiations by experienced and informed counsel on both sides, reached after litigation and analysis and the completion of substantial discovery.

Thus, the parties were fully informed of their respective risks and advantages when they reached the agreement. Based on this extensive information, Class Plaintiffs' Lead Counsel believe the Settlement to be fair, reasonable, and adequate, and warrant the Court's final approval.

**Dated:**  May 25, 2010

Respectfully submitted,

/s/ Michael McShane
Michael McShane
**Audet & Partners, LLP**
221 Main Street, Suite 1460
San Francisco, CA 94105
(415) 568-2555

Robert K. Shelquist (MN # 21310X)
**Lockridge Grindal Nauen P.L.L.P**.
100 Washington Avenue South, Suite 2200
Minneapolis, Minnesota  55401
Tel: (612) 339-6900
Fax: (612) 339-0981

Charles J. LaDuca
**Cuneo Gilbert & LaDuca LLP**
507 C Street N.E.
Washington, D.C. 20002
(202) 789-3960

*Settlement Class Co-Lead Counsel*

Arnold Levin
Charles Schaffer
**Levin Fishbein Sedran & Berman**
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
(215) 592-1500

*Plaintiffs' Liaison Counsel*