**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | : | |
|---|---|---|
| **IN RE: CERTAINTEED CORPORATION** | : | **MDL DOCKET NO. 1817** |
| **ROOFING SHINGLES PRODUCTS** | : | |
| **LIABILITY LITIGATION** | : | |
| _____ | : | |
| | : | |
| | : | |
| | : | |
| _____ | : | |

**REPORT ON CLASS MEMBER OBJECTIONS AND OPT-OUTS TO FINAL**
**APPROVAL OF CLASS ACTION SETTLEMENT**

## I.    INTRODUCTION

Plaintiffs, on behalf of a class consisting of millions of property owners across the country, and Defendant CertainTeed have entered in a settlement agreement that is fair, reasonable, and entitled to approval from this Court.  Further, the objections filed fail to show that the settlement is unfair to the class, the result of collusion between Class Counsel and Defendant, or otherwise unworthy of approval.  Accordingly, the objections should all be overruled in their entirety.

In determining whether to approve the Settlement Agreement, the Court should not decide the merits of the Plaintiffs' claims but should undertake a common sense approach and approve settlements that fall within "a range of reasonableness" and avoid demanding too large a settlement.  Indeed, a settlement is a compromise and absent collusion of the parties, the determination of Class Counsel that the settlement is in the best interest of the class is entitled to great weight.  As this Court has already found, the process by which the Settlement Agreement was negotiated was unobjectionable.  The Settlement Agreement was the result of adversarial negotiations between experienced attorneys, substantial discovery, and expert investigation into the alleged defects.  The objectors have raised no valid reasons why the Settlement Agreement should not be approved.

The vast majority of the objections were brought by a single firm, The Law Offices of James Capretz and Associates who work with several other firms collectively known as the Capretz Group or "Capretz objectors," who have premised their objections on the supposed failure to meet the "manageability" requirement of Rule 23 – a requirement not applicable to settlement classes.  For these reasons and the reasons set

1

forth below, Plaintiffs' respectfully request that the Settlement Agreement be approved and the objections be overruled.

This settlement provides substantial and immediate relief to members of the Class affected by the premature failure of CertainTeed's shingles and does so without the further expense and uncertainty of litigation. Further, despite the hyperbole employed by counsel for the objectors, the process to obtain relief is both fair and manageable. Class Members are hardly left to "fend for themselves" as counsel for the objectors would have this Court believe. Nor, as counsel for the objectors suggest, are Class Members subjected to an arcane and time consuming process. Indeed, the claims process requires minimal effort on the part of Class Members and is, and will continue to be, monitored by Class Counsel for the duration of the settlement. The settlement is manageable and provides substantial and immediate relief to an estimated 1.8 million property owners. None of the objections raised have merit and as such should not be allowed to derail the settlement.

## II.    REPORTING ON OBJECTIONS AND OPT-OUTS

There were 442 total objections filed in this case.

357 objections were filed by the Capretz Firm.

Three (3) objections were filed by Will Techmeier, working with the Capretz Firm.

Eight (8) objections were filed by lawyers representing Class Members.

74 objections were filed by Class Members *pro se*.

As of June 3, 2010, five objections filed by attorneys for Class Members were withdrawn.

2

As of June 3, 2010, 695 Class Members opted-out of the settlement. 593 opt-outs were represented by the Capretz Group.

Importantly, 83 of the Capretz firm's 357 objections, filed an opt-out request and an objection. See Exhibit 1 to Charles LaDuca's Declaration in Support of Class Counsel Report on Objections ("LaDuca Declaration"). Given that the last election was an opt-out, this reduces the number of objections by the Capretz firm to 277. It would also increase the number of opt-outs to 778.

Lastly, eight (8) of the Capretz Group's objections are from Class Members with fiberglass shingles, and as such have no standing in this Settlement. This would further reduce the number of objections by the Capretz group to 269.

## III.     STANDARD

The proposed settlement of a class action should be approved in accordance with Fed. R. Civ. P. 23(e) where, as here, it is "fair, reasonable and adequate." *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 148 F. 3d 283, 316 (3d Cir. 1998); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118 (3d Cir. 1990); *Walsh v. Great Atl. & Pac. Tea Co., Inc.,* 726 F.2d 956, 965 (3d Cir. 1983); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

As recognized by this Court in its granting of preliminary approval to the settlement, the judgment of experienced Class Counsel is entitled to great weight in determining the adequacy and fairness of the settlement. Courts in this Circuit have consistently held that the function of a judge reviewing a settlement is neither to rewrite the parties' settlement agreement nor to try the case by resolving the issues the settlement leaves unresolved. *In re Remeron Direct Purchaser Antitrust Litig.* No. Civ. 03-0085

3

FSH, 2005 WL 2230317, at *16 (D.N.J. Sept. 13, 2005); *In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 534-35 (D.N.J. 1997), *aff'd,* 148 F.3d. 283 (3d Cir. 1998); *see Bryan v. Pittsburgh Plate Glass Co.,* 494 F.2d 799, 804 (3d Cir. 1974); *Bullock v. Kircher,* 84 F.R.D. 1, 4 (D.N.J. 1979). Thus, "'[t]he temptation to covert a settlement hearing into a full trial on the merits must be resisted.'" *Bell Atl. Corp. v. Bolger,* 2 F.3d 1304, 1315 (3d Cir. 1993) (quoting *Mars Steel Corp. v. Cont'l Ill. Nat'l Bank & Trust Co.,* 834 F.2d 677, 684 (7th Cir. 1987)).  Although this court has broad discretion in approving a class action settlement, significant weight should be given to the determination of experienced counsel that settlement is in the best interests of the class. *In re Auto. Refinishing Paint Litig.*, WL 4570918, at *3; *Petruzzi's, Inc. v. Darling-Deleware Co., Inc.*, 880 F. Supp. 292, 301 (M.D. Pa. 1995).

The Court should apply an initial presumption of fairness when reviewing a proposed settlement where, as in the instant case, "'(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F3d. 201, 232 n.18 (3d Cir. 2001)).

## IV.    ARGUMENT

### A.    Capretz and Techmeier Objectors ("Capretz Group")

The vast majority of the objections before this Court were signed the Capretz Firm and other law firms working with the Capretz Firm, including Will Techmeir from the Johnny Cochran firm in Wisconsin, not to be confused with Objector's counsel Edward Cochran from Ohio. Hereinafter, all firms working with the Capretz Firm will be

collectively called the ("Capretz Group") or the ("Capretz objectors").  None of the issues raised by the Capretz objectors are sufficient to prevent certification of the settlement class and final approval of the settlement.  The objections brought by the Capretz group make two arguments: (1) that the settlement is procedurally unmanageable and (2) that the terms of the settlement are unfair and provide too little compensation.  In support of this argument, the Capretz objectors contend that the claims process is too burdensome; there is no third-party assistance for filing a claim; CertainTeed is the claims administrator; there is no constraint on the amount of time CertainTeed may take to process a claim; and the resulting payment is insufficient.  Each of these contentions is false.

The claims process is streamlined to assist the maximum number of Class Members possible as quickly as possible.  Protections are built into the claims process, including annual reporting to class counsel, to ensure that CertainTeed is complying with its obligations under the settlement.  There is nothing in the settlement to prevent Class Members from seeking assistance from their own attorneys in preparing their claims forms.  The settlement does attempt to prevent predatory third-party organizations posing as claims services from republishing notice and then filing claims forms on behalf of class members in exchange for an unnecessary fee.  Finally, the amount of the recovery is well above what class members would have received under their warranties alone.  In fact, the settlement goes so far as to provide recovery for those class members *without* a warranty and even those class members who *waived* their rights against CertainTeed by accepting an earlier settlement.

### 1.      Manageability

5

As the Capretz objections rightly recognize "when classes are certified for settlement rather than litigation, proponents of settlements are absolved of meeting the 'class action manageability' criterion for class certification under Rule 23(b)(3)(D)." (Capretz Objector Brief, at pp.19-20.)(citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)); *see also In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009); *Grunewald v. Kasperbauer*, 235 F.R.D. 599, 604 (E.D. Pa. 2006); *Weber v. Gov't Emples. Ins. Co.*, 262 F.R.D. 431, 441 (D.N.J. 2009). Despite recognition of this rule, Capretz goes on to argue that the settlement fails to meet a nonexistent manageability requirement. In any event, upon examination of the claims process described in the settlement, and granted preliminary approval by this Court, it is apparent that manageability is not truly at issue in this case.

As described below, the claims process employed by the settlement is both fair and manageable. As this Court has already granted preliminary approval to the settlement it is familiar with the claims process and believes it to be fair and manageable. The brief filed by objectors contains a number of inaccuracies regarding the burden placed on class members and the oversight of the claims process to be provided by class counsel.

## 2.     Claims Process

The Capretz objectors' completely mischaracterize the claims process and attempts to portray it as a second round of litigation. This is simply not the case. Far from a "mini-trial," in order to participate in the settlement class members are required to fill out one of two forms – a standard claim form or an abbreviated claim form – and

provide proof of ownership of shingles covered by the warranty and proof of damage to the shingles.

As outlined in the settlement agreement, the following conditions constitute damage sufficient to warrant payment under the settlement: blistering, clawing, cracking, curling, cold weather curling, fishmouthing, and spalling. (Settlement ¶3.6.)

While the Capretz Group makes much of the supposed burden of providing a shingle sample to the claims administrator, he completely ignores the fact that that is simply one of four ways to prove ownership of product covered by the settlement. (Settlement ¶4.6.) In addition to a shingle sample, the types of product identification acceptable are photographs of the roof structure; contemporaneous documentary proof of purchase and installation of shingles, including an invoice from a roofer and proof of payment; and a prior communication from CertainTeed that confirms that shingles covered under the warranty are installed. (*Id.*) Thus, despite objectors' protests to the contrary, the proof required of class members is no more burdensome than that that was required to make a warranty claim to CertainTeed. Indeed, evidence of a previous warranty claim is itself sufficient proof.

Class Members with remaining warranty coverage who wish to participate in the settlement will file a claim form at any time prior to the expiration of their warranty. This creates a claim period of twenty-five years. Those Class Members who are no longer covered by a warranty but are still members of the settlement class have one year from the entry of the final order approving the settlement, to file their claims. The Court ordered notice of the settlement was disseminated beginning in February of this year, meaning that these class members will likely have approximately eighteen months to

make a claim, assuming that the settlement does not become final until July or August of this year. The effectiveness of the notice is underscored by the fact that Class Members have already filed approximately 25,000 claims. See LaDuca Declaration at 5.

While the Capretz group makes much of the supposedly burdensome length of the settlement claims form, an actual examination of their content reveals that they are hardly burdensome.  The longer, standard claim form requires Class Members to provide information about the property and how long they have had the settlement-covered CertainTeed product installed on their property.  The first page of the form requesting information asks for claimant contact information and the address of the property on which the covered product is installed.  The second page requests information about the property type, when the property was acquired, and proof of ownership.  Proof of ownership can be shown using (1) a copy of the current mortgage statement; (2) a copy of the current homeowners insurance statement; (3) a copy of a current utility bill; or (4) a copy of the property deed. These are hardly burdensome demands, and most claimants can likely complete this portion of the claim form in the amount of time it takes to simply handwrite the information into the space provided. The third page asks whether the claimant has previously made claims under the warranty and whether it was inspected, the type of shingles installed, when, and by whom.  The fourth page requests the total square footage of the roof, total square footage of the shingles installed, and other roof dimensions.  The fourth page also asks for a description of the condition of the shingles and explains the shingle sample.  Again, as discussed above, the shingle sample is not required in all instances and is not the only method of making a valid claim under the settlement.  Page five further explains the shingle sample and the alternative, class

members will have to check one of two boxes on this page. The sixth page is all "check the box" prompts as well, providing an opportunity for class members to receive $50 in reimbursement for shingle removal assistance and explaining the acceptable documentation on product identification, date of installation, quantity of shingles, and condition of shingles. The seventh page provides an opportunity for the class member to request to be present for the property inspection, if any, and begins the acknowledgement of released claims against CertainTeed in exchange for settlement. Page eight continues the acknowledgment of released claims and requires the claimant to sign under penalty of perjury. (*See* Motion for Preliminary Approval Ex. B.)

This claim form does not present insurmountable or even onerous tasks as portrayed by the Capretz objectors, especially when one considers that the claimants did not have to bear the burden of litigation, as did the class representatives. Requiring Class Members to merely provide the basic information establishing that they are indeed Class Members ( i.e. have or had the subject shingles), and can show the request damage would have to be done in the context of litigation, or even a warranty claim.

Nor does it require "claimants to collect or respond to information they are unlikely to have or even could not possibly know" as the Capretz group disingenuously argues. (Capretz Objection, at p.21.) For example, nothing in the claim form would require a Class Member to specify "how long their shingles were stored by CertainTeed's distributor before installation." (Capretz Objection, at p.21.) In support of that utterly outlandish claim, Capretz makes reference to ¶3.7(l) of the settlement agreement which provides that if CertainTeed can show "Damage to CertainTeed Organic Shingles cause by stores of shingles that were installed more than two years after they were

9

manufactured[,]" that is a valid ground to deny a claim.  It has absolutely nothing to do with CertainTeed's distributors nor does it impose a burden on the class member to determine how the shingles were stored prior to their purchase.

Class Members have **three attempts** to provide a properly completed claim form to the claims administrator before a claim is denied.  While the Capretz Group attempts to portray the process as one of unchecked discretion for CertainTeed to deny class members claims through bureaucracy, that is simply not the case.  As the settlement agreement makes plain class counsel will receive notification of any and all claims which are denied in whole or part, so as to insure the claims process is being implement fairly and pursuant to the terms of the settlement. ( add cite to settlement) In addition, an annual report "identifying the Claimants whose claims have been resolved in the prior 12 months, the amount distributed to each Eligible Claimant, and **the basis for denying any claims**." (Settlement ¶4.33, emphasis added.)  Further, "Class Counsel" shall have the right to audit, on an annual basis, the processing and disposition of Claims submitted by Claimants to CertainTeed under this Agreement."  (*Id.* at ¶4.34.)

That Defendant will establish a Claims Office rather than use a third-party administrator does not make the process either unfair or unmanageable.  Indeed, this provision was chosen because CertainTeed has decades of experience in processing claims made under the warranty through an internal claims office rather than a third-party administrator.  Thus, CertainTeed already possesses the capability to administer the claims process.  This minimizes the cost of the settlement and ensures class members fast and efficient responses to their claims.

More importantly, Class Counsel will continue to be involved in the monitoring of the settlement throughout the claims period.  Class Counsel's continued involvement ensures that CertainTeed is fairly evaluating the claims made to the claims administrator and is complying with the terms of the settlement.

Further, the settlement also provides that and Independent Claims Administrator will be agreed to by the parties or appointed by the Court. An aggrieved claimant will have the right to appeal the denial of their claim to the ICA, and that decision is final.

Finally, if either party believes that the settlement is not being implement properly, for any reason, they can take their grievence to a Special Master. And as a matter of last resort, this Court has continuing jurisdicition of the settlement for the life of the claims process.

The Capretz Group's argument that "time" is a barrier to recovery in this settlement is ironic given that it Capretz who is seeking to stall the implementation of the settlement through meritless objections. (*See* Capretz Objection, at p.21.)  The 180 day timeframe for CertainTeed to evaluate the claims packages submitted by class members is reasonable, especially given the right of claimants to make three attempts to properly complete the claim.   Further, given the vast number of potential claimants the 180 day time frame was chosen to ensure a fair evaluation of the claims packages submitted. Capretz also argues that failing to allow for claims on shingles that have not actually failed is an unreasonable delay in recovery. (*Id.* at p.22.)  This too is an objection without any meaningful basis. Class Members are entitled to compensation for an entire roof plane once they are able to show that just 5% of the shingles are experiencing

failure. This far exceeds even the warranty terms, which limited claims to the actual failed shingles, and no more.

The Capretz group next argues that CertainTeed has too many grounds to deny a claim and that serves a barrier to recovery. (*Id.*) Again, in support of this argument the Capretz group trots out the false assertion that class counsel is abandoning the class and CertainTeed is only required to make a showing "to itself" in order to deny a claim. This is simply not true. The defenses can only be asserted if the principal cause of the failure was something other than the claimed defect. Not requiring Certainteed to pay a claim because a roof was damaged by hail or something other than the subject defect is not an unreasonable provision. And as noted above, the three opportunities to correct a claim, Class Counsels' receipt of denials, the ICA , the Special Master and the continuing oversight of this Court offer ample protection to ensure the process is administered fairly.

### 3.    The Settlement Is Fair

The Capretz objectors further claim that, despite providing compensation up to $74 per square of CertainTeed product installed, the settlement's economic value is "negligible" and inadequate. (Capretz Objector Brief, at p.26.) The Capretz group bases this assertion on his belief that class members will "not receive a new roof or repairs…" (*Id.*) In evaluating a class action settlement, the Court may not demand perfection as a prerequisite for approval. "[C]ourts approving settlements should determine a range of reasonable settlements in light of the best possible recovery…and a range in light of all the attendant risks of litigation…" *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3d Cir. 1995). "The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation;

after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." *Id.*

As discussed more fully in Plaintiffs' Motion for Final Approval of the Settlement, this Settlement provides Class Members with immediate and substantial relief. The Settlement establishes a claims process whereby owners of Shingles that have failed will obtain compensation under one of three categories: (1) those who own or owned faulty Shingles that are still under warranty will obtain compensation of $74 per square; (2) owners of Shingles that have failed but are out of warranty will obtain compensation of $34 per square; and (3) those who resolved warranty claims with CertainTeed on or after August 1, 2006, and have executed a release in favor of CertainTeed will receive 20% of the difference between the amount received on the warranty claim and the amount that would have been received in the absence of a release. The payments under each of the categories will be reduced on a *pro rata* basis to reflect the actual usage a class member received from the roof, but only after the roof has been on the structure for ten years.

The Capretz Group's contentions that the settlement provides nothing greater than the warranty are obviously false. Property-owners with a warranty receive $74 per square, pro rated after 10 years of use on a 25 or 30 year warranty. This is substantially more than the amounts that were being offered to class members prior to the settlement. More importantly, and as noted above, once the claimant shows just 5% damage, there claim is calculated so they recover for 100% of the the roof plane---which, again, is far beyond what the warranty provides.

13

The Capretz Group's criticism of the prior releaser provision is particulary hard to understand. This provision provides compensation to those property owners who accepted CertainTeed's offers under the warranty prior to the settlement *and freely waived their claims against CertainTeed, yet they* are still able to recover under this settlement 20% of the difference between what they were paid and what they would have been able to recover had they waited.  Further, those individuals who did not waive their claims and are *not covered by the warranty* by virtue of the sale or resale of the property following the installation of the shingles are also entitled to recover under the settlement in an amount of $34 per square pro rated only after 10 years of use on a 25 or 30 year warranty.

Given the numerous risks attendant in consumer products class action litigation, this settlement falls well within the acceptable range of reasonableness that is the standard in this circuit.

### 4.  Mr. Capretz has assumed the role as Professional Objector

Unfortunately, in more and more class action settlements of late, professional objectors have entered appearances in an effort to extort payment of fees in exchange for "withdrawing" the objections.  In the present case Mr. Capretz, as so many professional objectors before him, has filed a host of frivolous, mostly boilerplate "objections," purportedly on behalf of 357 purported class members. [S]ome of the objections were obviously canned" objections filed by professional objectors to seek out class actions to simply extract a fee lodging a generic, unhelpful protest.." *See Shaw v. Toshiba America Information Sys., Inc.*, 91 F.Supp.2d 942, 973 (E.D. Tex. 2000). The Supreme Court, in an dissenting opinion authored by Justice  Scalia joined by Justices Kennedy and

Thomas, discusses that professional objectors are "undeterred" from filing an "irrational" meritless objections because of the hope of extracting a fee makes it rational to file an "irrational" appeal . *Devlin v. Scardelleti*, 536 U.S. 1, 21, and  n. 5 (2002).

As more and more Courts are finding, these types of objectors serve no useful purpose to the process, and have only one ulterior motive: to obtain attorneys fees.  If Class Counsel and defense counsel refuse, the objector will hold up implementation of the settlement benefits to, in this case, over 1.8 million worthy class members.  This is a far cry from the traditional objector case who is often completely unaware of the pending litigation until he or she receives notice of the proposed settlement.  Indeed, Mr. Capretz knew of this litigation for many years, advertised extensively for and collected over 1,000 clients.[1]  In fact, approximately two and one-half years ago, The Capretz Group obtained a tolling agreement from CertainTeed so that they would not have to file a lawsuit and actually prosecute their claims. See LaDuca Declaration at 6.

If the Capretz Group was truly interested in representing the best interests of their clients all they had to do was file a single lawsuit in the MDL, which would have brought them into the process, including giving them the benefit of the product of extensive discovery and, most importantly, allowed them to have input into the terms of the settlement. However, the Capretz Group plainly made a strategic decision that it would be in their best interests to wait until the settlement was noticed, and then object. No rational reason can be presented to support the notion that they were looking out for the best interests of their clients by not doing anything for three years when they were fully aware of the MDL litigation. Class Counsel do not take lightly the assertion that counsel

---

[1] Eventually the Capretz Group decided a thousand clients was enough and/or too much for their purposes. Starting in 2009 Class Counsel was actually contacted by class members who were being referred to them by the Capretz Group. See LaDuca Declaration at 7.

are proceeding as a would be professional objector, however, when one considers the complete circumstances surrounding the Capretz's Group involvement in this matter it is difficult to reach any other conclusion. We of course await the Capretz's Group explanation, which they will undoubtedly present to this Court, for why it was in the best interests of their clients to do absolutely nothing for three years when the MDL proceeding provided a ready made vehicle to pursue their claims with the added benefit of and the aid of Class Counsel.

Unfortunately, for now, by all appearances the motive behind the filing of these boilerplate objections is clear: legal extortion. Mr. Capretz is hoping for a quid-pro-quo arrangement whereby he is able to obtain legal fees in exchange for withdrawing his objections or agreeing not to appeal. This is made all the more obvious by his decision to object on behalf of 357 of his clients while also filing opt-out requests on behalf of over 500 opt outs of his clients. As noted, in August 2009, Mr. Capretz provided both Class and defense counsel with a list of clients that are purported are represented by "The Capretz Group," which included not only his own firm but also the firm of Pearson, Randall & Schumacher. Following Mr. Capretz's filing of an objection on behalf of 357 objectors that came from this list of "Capretz Group" clients, Pearson Randall filed 593 opt-out requests, also these names came from clients on the "Capretz Group" list. Why Capretz would decide that some of his clients are deserving of an entirely new litigation and opt-out of the settlement on their behalf, while keeping another set of his clients in the litigation to object to the settlement is unknown.

Also, as an aside, Class Counsel were aware that Mr. Randall and Mr. Capretz were working together up until some point in May, in this case. Specifically, at some

point in time, likely because of the inherent conflict of interest involved in representing both opt outs and objections, these two firms made a decision for one firm to handle the opt outs and one firm to handle the objectors. There is a clear conflict in handling opt outs and objectors at the same time. *See In re: Corn Derivative Antitrust Litigation*, 748 F. 2d 157 (3d Cir. 1984). Oddly enough, Mr. Randall is still on the phone and the email chains with negotiations on objections. Also, Mr. Randall has indicated as opt out counsel he is seeking a Class Counsel fee.

However, we do know that among those clients on whose behalf the Capretz Group has filed objections several are not members of the class.  Objectors Todd and Patt Amberg, Gordon Berg, Ed and Sara Cobain, Brian and Cindy Peifer, Darel Smith, Timothy and Debra Strahm, and Eleanor Wimme have previously filed warranty claims with CertainTeed for failure of their shingles.  During the warranty claims process it was revealed that those individuals have CertainTeed fiber glass shingles, which *are not included in this settlement*.  Filing objections on behalf of non-Class Members is plainly not appropriate and Class Counsel requests that these objections be stricken and that the Capretz Group be ordered to take the necessary corrective action, including notifying these individuals that they are record as having opposed this settlement.

In addition, again, 83 of the Capretz Group's 360 objections, filed an opt-out request and an objection. Given the last election was an opt-out, this reduces the number of objections by the Capretz group to 277. To date, we are not aware of the Capretz Group or Opt out Counsel having advised the Court of their decision to change the election of these individuals---assuming they are even aware of what they have done.

Again, the Capretz Groups' careless approach to this process, as demonstrated by the improper objections and the making of duplicative elections, reflects a focus not on the client's best interests, but what is best for the attorneys involved.

In addition, Mr. Capretz is not new to this jurisdiction. Mr. Capretz objected to the $100 million Settlement with Acromed, in the *In re Orthopedic Bone Screw Products Liability Litigation,* EDPA MDL 1042. Mr. Capretz's objections were dismissed by Chief Judge Bechtle. An appeal was lodged to the Third Circuit. However, mysteriously Mr. Capretz withdrew his appeal with no indication on the record of any benefit being conferred to the Class, and without notice to Class Counsel (Arnold Levin), nor any filing in the District Court. A glaring question since the District Court docket is void of any reason for the withdraw of Mr. Capretz's objections and appeal, is whether Mr. Capretz or his client received any monetary payment from the Defendant. Query, did Mr. Capretz receive any remuneration from the Defendant?

This settlement will provide immediate and substantial relief to an estimated 1.8 million property owners suffering from damage to their defective shingles.  To allow Mr. Capretz and the Capretz Group to upend this entire settlement over an attempt to obtain undeserved attorneys fees is unacceptable.  And to accept the Capretz Group's uninformed objections over the judgment of Class Counsel who have been actively litigating this case since its inception would reward inaction and encourage the holding hostage of class action settlements in exchange for fees.

### B.     Pentz, Cannata, and Cochran's Objections

Michele Puiggari, through her counsel John J. Pentz and Sam Cannata,[2] objected

to Class Counsel's Petition for Fees and Expenses, filed on May 4, 2010.  (Dkt. No. 153).

Class Counsel noticed the depositions of the three objectors, however, the day before the

first deposition was to begin, Class Counsel was able to resolve these objections.

Although the parties continue to disagree on the merits of the objections, Class Counsel

recognized that the objections were brought in good faith.

Mr. Pentz, Mr. Cannata, and Mr. Cochran have withdrawn and/or choose not to

pursue their objections to the settlement. In support of withdrawing their objection, Class

Counsel and Certainteed have agreed to post a notice on the settlement website listing the

amount of fees Class Counsel sought, and if an agreement is reached on fees, the amount

of fees agreed upon. If Class Members have any questions to the notices, the settlement

website will indicate a direct line to call Lead Class Counsel regarding their questions.

Class Counsel has agreed to reimburse these three firms for their time and efforts up to a

collective maximum of fee $97,500. This amount will be paid out of any fee award

granted to Class Counsel by this Court and will only be paid if these firms present time

and expenses records supporting up to the maximum. In no event will a multiplier be paid

on any time submission and any excess time or expenses will not be compensated.

---

[2] Ed Dargay and Linda O'Brien, through their counsel Edward W. Cochran, adopted and incorporated the objection Repeat objectors to class action filed by Michele Puiggari.  They have raised no independent arguments.  Accordingly, the response to Mr. Pentz's objections apply with equal force to those of Mr. Cochran.

### C.    Other Objections

#### 1.    Karlin Objectors

The Board of Directors of The Lake Katherine Townhome Association, Inc. and Gail Smith Coughlin, through their counsel, Lawerence M. Karlin, Esq., objected to the compensation provided through the Settlement and to the claims procedure. In addition, interestingly enough, Ms. Gail Smith Coughlin filed a claim in this settlement as well. So in essence she is both supporting the settlement by filing a claim and challenging the settlement by objecting.

On June 1, 2010, Mr. Karlin notified Class Counsel & CertainTeed that Lake Katherine's objections were resolved with CertainTeed and that he was withdrawing his objections.

In response to Gail Smith Coughlin's Objection: With respect to the monetary relief provided to Class Members, as noted above in Section III.A.3., the Settlement's economic value is considerable and provides Class Members with substantially more than what CertainTeed offered before the Settlement.

Mr. Karlin's criticism that the Settlement "would preclude subsequent purchasers from submitting a claim under the Settlement absent documents transferring the claim," (Karlin Obj. at ¶7.b.), is based on a misreading of the Agreement. The Settlement provides that a Class Member shall be deemed an Eligible Claimant who is entitled to compensation if they either (1) own a building with CertainTeed Organic Shingles when they submit a claim package or (2) they previously owned such a building before making a claim and retained the right to make a claim for the shingles when they sold or transferred the building. (Settlement ¶3.2(a)). Previous owners, not subsequent

purchasers, are required to submit documentation that they retained the right to make a claim for the shingles. This provision is necessary because otherwise, the current and previous owner of a property with CertainTeed Organic Shingles could both make claims to recover under the Settlement, thereby unfairly exposing CertainTeed to double liability.

Mr. Karlin's objection on behalf of Ms. Smith that the claims process is unduly burdensome, *see* Karlin Obj. at ¶7.c-d, is likewise misplaced. As described above in Section III.A.2., Class Members are provided with numerous options through which to establish proof of ownership and damage to the CertainTeed Organic Shingles. The methods available are no more burdensome than those required to make a warranty claim to CertainTeed. Class Members are required to "use reasonable due diligence to provide the date of installation" such as public records, "certificate of occupancy, final building inspection, or documents sufficient to establish the date of first purchase of the property if new construction with original installation of CertainTeed Organic Shingles if the Claimant is the original owner." (Settlement ¶4.5(l)). This provision does not impose undue hardship on Class Members.

Mr. Karlin's complaints regarding the necessity that Class Members provide proof of ownership of the shingles at issue are equally misguided. The Settlement Agreement provides Class Members with four ways to prove ownership of the product including a shingle sample, photographs of the roof structure, documentary proof of purchase and installation, or a prior communication with CertainTeed. (Settlement ¶4.6.) Mr. Karlin does not suggest less burdensome means of establishing proof of ownership

and requiring claimants to prove that they actually have the product at issue is unquestionably a necessary prerequisite to establishing entitlement to compensation.

### 2.    *Pro se* Objectors

Seventy-four class members filed objections to the settlement with all but one objecting solely on the basis of the amount of the recovery.[3]  Of those seventy-four, ten previously voluntarily released all of their claims against CertainTeed by accepting settlement offers prior to the finalization of the class-wide settlement at issue here.  One class member objected to CertainTeed serving as the claims administrator.[4]  All of the objections should be overruled.  No objector has shown that the terms of the settlement are unfair or the result of collusion, only that they wish to be paid more.

As discussed above, the Court should refrain from demanding too high a number as a condition of settlement.  A settlement is just that, a compromise to ensure certain compensation now as opposed to uncertain compensation years from now after further litigation.  Class Members who were dissatisfied with the amount they are to receive under the terms of the settlement were given ample opportunity to opt-out of the

---

[3] Class Members: Gene Allery, Carey Andrew and Lorna Andrew, James Jones and Nanci Barfoot, Rudy Bernhard, Jon Allyn Bromaghim, Lorraine Butler, Robert H. Bockrath, Lonnie J. Barton, Ken Bowe, Steve Casey, Thomas Conroy, Courtie Demarest, Deborah Dyschkant, Harry Edinger, Valerian Furmanek and Geraldine Furmanek, John P. Gengler, Todd Gill and Christine Gill, Lawrence Gyorkos, Timothy Haley, Larry Jacob, James Jornd,  Francis Jette, C. Kevin Kellogg, Wind Meadows Corporation, Douglas Koland and Beverly Koland, James A. Lively, Peter Larme, Steven Laufenberg and Therese Laufenberg, Vicky L. McKindley and Ruth A. Lipschutz, Vickey McKinley, Kirk Mango and Chris Mango, William A. McCune, Barbara Micek, William Monaghan, Thomas Mullens, Allan Murzyn, Joseph P. Markey, Arland Otte and Myrna Otte, James Potter, Marcella Plomski, David G. Rowe and Cynthia M. Rowe, David Sedgwick and Esther Sedgwick, Linda A. Schraffenberger, Judy A. Schmid, Shirley A. Schaefer, Mike Scarberry, Russel D. Sabac, Lance Sermerscheim, Edward Severson, Marcia Spitza, Brian Sykora, Susan Strong, Robert Trinkl, John Turgeson, Robert Tuskey, Chuck Turner, John Umbs, Lorena Vasquez, Robert Vavrek and Jennifer Vavrek, Scott D. Vllter, Douglas Wolf, Rick Wood and Lyn Strand, Robert Znamenacek, Edward Zyszczynski, John H. Vrieze objected to the amount of the settlement.  Class members Yvonne Bernardy, Jenny Bucholz and Thomas Bucholz, Douglas B. Henderson and Susan Hughes Gingrasso, Robert Heien, Jr., Dale E. Katsma, Peter A. LeMere, Richard V. Ludwig, Thomas P. Paul, Pat Rosenhamer, and David Zastrow previously released all claims against CertainTeed and are objecting to the settlement's provision of 20% of the difference between what they previously received and what they would have received had they not released all claims.

[4] Class Member Bruce W. Ganzer.

settlement and pursue their own claims as some chose to do. Nothing raised by the objectors here is sufficient to deviate from the standards outlined above that the judgment of class counsel on the fairness and adequacy of the settlement is to be given great weight.

As to those class members objecting on the basis that their awards will be 20% of the difference between what they previously received when they released all their claims against CertainTeed and what they would have received under the full settlement, their objections are frivolous. Those class members voluntarily and knowingly released all of their claims against CertainTeed, Class Counsel was under no obligation to obtain any remuneration for those individuals but were successful in doing so. Accordingly, their dissatisfaction with their compensation on claims they had already released is immaterial to the final approval of this settlement.

Finally, certain objectors complained about the lack of compensation for interior damage to their properties allegedly caused by the failure of CertainTeed's shingles. While those claims are not compensated by the settlement, nor are they included in and released by the settlement. Therefore, those class members are free to pursue those claims against CertainTeed themselves.

Accordingly, the objections should be overruled in their entirety.

### 3.    Schaub Objection

Class Member George A. Schaub, through his counsel Kenneth E. W. Thomson, raised five objections to the settlement based on (1) the incentive payments to class representatives; (2) the proration for age of the shingles; (3) the amount of the settlement;

(4) a misperception that the settlement requires class members to submit multiple claims; and (5) the undetermined amount of the attorneys fees.

As to Mr. Schaub's first objection, incentive payments for Class Members, as discussed more fully in Plaintiffs' brief for final approval "[c]ourts routinely approve incentive awards to compensate named plaintiffs for the service they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 145 (E.D Pa. 2000)(quoting *In re So. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)). "Incentive awards are typically awarded to class representatives for their often extensive involvement with a lawsuit and courts in this Circuit have traditionally granted requests for these awards." *In re Automotive Refinishing Paint Antitrust Litig.*, MDL No 1426, 2008 WL 63269, at *7 (E.D. Pa. Jan. 3, 2008)(granting incentive awards totaling $30,000.00 to each class representative). In the instant case, the named Plaintiffs provided Class Counsel with invaluable assistance in the prosecution of this action and, in some cases, were subject to depositions. Accordingly, the incentive payments are appropriate.

As to Mr. Schaub's second and third objections, concerning the proration for use and the amount the settlement, these must be overruled for the reasons discussed above. The proration is necessary to prevent an unfair windfall to class members who have enjoyed longer use of their shingles versus those whose shingles have failed at an especially premature rate. This ensure that Class Members are compensated at the same rate per square of shingle and per years of use.

Mr. Schaub's fourth objection misstates the burden on class members. Class Members are not required to submit multiple claims in order to obtain compensation. As

detailed in the settlement agreement and discussed in the brief for final approval, once a class member can show that just 5% of the shingles are damaged there is a presumption of compensation for 100% of the roof.

Finally, as to Mr. Schaub's objection to the attorneys' fees, as shown in Class Counsel's fee brief, the fees are reasonable and in line with other fee awards in comparable class action litigation. Class Counsel devoted a substantial amount of time and resources to the prosecution of this action and the lodestar and multiple are reasonable and do not represent an undue windfall.

Accordingly, Mr. Schaub's objections should be overruled in their entirety.

### 4.    Dunker Objection

Roger Dunker, represented by Steve Berk of Berk Law DC, has objected to the amount of the Class representative bonus payment awarded to him. Mr. Dunker believes he is entitled to more money as a class representative than the other class representatives. Class Counsel supports the Class representative bonus payment the Court awarded, but believe this issue is solely the Court's issue to weigh in on.

## IV.   Conclusion

For the reasons set forth herein, Plaintiffs respectfully request that the Settlement Agreement be approved and the objections be overruled.

Respectfully submitted,

Date:  June 7, 2010

/s/Charles E. Schaffer_____
Arnold Levin, Esquire
Charles Schaffer, Esquire
Levin Fishbein Sedran & Berman
Liaison Counsel

Michael McShane, Esquire
Audet & Partners, LLP
Co-Lead Counsel

Charles J. LaDuca, Esquire
Cuneo Gilbert & LaDuca, LLP
Co-Lead Counsel

Robert Shelquist, Esquire
Lockridge Grindal & Nauen, LLP
Co-Lead Counsel