IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In Re: CertainTeed Corp. Roofing | : | CIVIL ACTION |
| Shingle Products Liability Litigation | : | |
| | : | |
| | : | |
| | : | |
| | : | NO. 07-MDL -1817 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                                                                    September 27, 2010
United States Magistrate Judge

      Now before this court is a petition for attorney's fees filed by class counsel in the instant class action litigation. Plaintiffs are a class consisting of approximately 1.8 million members, filing suit against Defendant CertainTeed for premature deterioration of their roofing shingles. This fee petition is filed pursuant to Judge Pollak's Order certifying the class and approving the class settlement between Plaintiffs and Defendant CertainTeed on August 31, 2010.[2] Presently, Class Counsel request $21,886,199.97 in attorney's fees and $613,800.03 in out-of-pocket expenses. I have reviewed the entire record for this litigation. For the reasons expounded in more detail below, I recommend that Class Counsel's fee and expense requests be granted.

## BACKGROUND

      This case arises out of the alleged premature deterioration of CertainTeed Organic Roofing Shingles. Defendant CertainTeed began receiving complaints of the failure of their shingles in 2005, and the first case was filed against them in the Eastern District of Pennsylvania

---

      [2] *In Re CertainTeed Corp. Roofing Shingle Products Liability Litigation*, 2010 WL 3452370 (E.D. Pa. 2010).

in September 2006.³  Thereafter, twenty additional actions were filed throughout the country. The Judicial Panel on Multi-District Litigation consolidated thirteen of the cases before this court on February 16, 2007.⁴

The consolidated complaint entered by Plaintiffs alleged breach of contract and express warranty, misrepresentation, violation of implied warranty, and strict liability and negligence claims.  The court appointed Arnold Levin as Liaison Counsel, and appointed Robert K. Shelquist, Michael McShane, and Jon Cuneo as co-lead counsel on April 16, 2007.  On May 30, 2007, Arlene Ficker and Lawrence Hoyle, Counsel for CertainTeed, filed its answer to the complaint.  Nearly three years of extensive discovery followed, including depositions, interrogatories, inspection of roofs, and analysis of shingle samples.  The drawn out procession toward settlement and subsequent fee requests can be summarized as follows.

On December 15, 2009, Plaintiffs filed a motion for preliminary certification of the class and preliminary approval of a settlement of the class action.  The court granted both motions on December 29, 2009, and a final fairness hearing was scheduled for June 8, 2010.  Class members were informed of the procedures for objecting to, or opting out of, the class action settlement.  Prior to the fairness hearing, the court received 446 objections from class members.  363 objectors were represented by Attorney Jim Capretz.  Capretz' law firm also represented 593 opt-outs.

---

³ *Catherine Barrett v. CertainTeed Corp.*, C.A. No. 2:06-4117 (E.D. Pa).

⁴*In Re CertainTeed Corp. Roofing Shingle Products Liability Litigation*, 474 F. Supp. 2d. 1357 (Jud.Pan.Mult.Lit. 2007).

On May 4, 2010, Class Counsel filed a motion for attorney's fees, requesting $37 million in fees and over $613,000 in expenses. On May 25, 2010, Class Counsel moved for final approval of the settlement agreement and certification of the class. Simultaneously, CertainTeed filed a motion in support of the settlement and class certification. Counsel for objectors filed a motion in opposition to the motion for attorney's fees on June 1, 2010. On June 7, 2010, a day before the final fairness hearing, a memorandum of understanding ("MOU") between Class Counsel, Counsel for objectors, and CertainTeed clarified and modified several provisions of the proposed settlement. A supplemental submission revealed that Class Counsel and CertainTeed had agreed upon attorney's fees and expenses for the reduced amount of $22.5 million in total.

Class Counsel, CertainTeed, and Counsel for objectors were all present at the final fairness hearing on June 8, 2010. Class Counsel spoke of the procedural posture of the case, the modifications contained in the MOU, the types of objections presented by the objectors, and their fee petition. Attorney Capretz outlined the work that his law firm had accomplished in support of the settlement and asked for additional time to inform his clients about the changes to the settlement and to determine whether they would continue to object. Although CertainTeed moved for court approval of the settlement, the court scheduled a status conference hearing for July 21, 2010 due to the last minute changes in the documents and in order to give objecting counsel time to relay the changes to his clients.

On July 20, 2010 Attorney Capretz filed a motion for fees and expenses pursuant to the MOU, asking for $2,017,681.00 in attorney's fees and $83,587.99 in expenses. An addendum to the motion noted that 460 members of the class who had opted out were choosing to opt back in. At the hearing on July 21, 2010, because there was uncertainty as to the final number of opt-outs

and objectors, the Court asked the parties to submit information on the matter.  Attorney Capretz explained that he had sent two letters to objectors and opt-outs, advising them of changes and asking whether they wanted to continue to object or opt-out.  357 of the 363 objectors he represented withdrew their objections, while 489 of the 593 opt-outs decided to opt back in.  The remaining six objectors did not respond.  102 opt-out clients did not respond, while two responded by saying they would continue to opt-out.

On July 30, 2010, Class Counsel formally filed an updated petition for fees and expenses in the amount of $22.5 million.  Counsel for objectors would also receive their fees and expenses from this amount.

A final motion for approval of the settlement was filed by CertainTeed on August 12, 2010.  The submission contained the final estimate of objectors and opt-outs.  362 of the 363 objectors represented by Attorney Capretz decided to withdraw their objections.  Five of the other eighty- three objectors represented by other counsel or appearing *pro se* also withdrew objections.  As for the opt-outs, 501 of the 593 represented by Attorney Capretz decided to opt back in.  Ninety-six represented by other counsel or *pro se* did not withdraw their request for exclusion.  Thus, at final tally, there were 79 objectors and 186 opt-outs.

On August 27, 2010, the Court entered its judgment certifying the class and approving the class settlement, leaving attorney's fees as the sole remaining issue before the court.  Instantly, Class Counsel request $21,886,199.97 in attorney's fees and $613,800.03 in out-of-pocket expenses.  For the reasons outlined below, I recommend that the Court award both the requested fee and reimbursement for expenses.

DISCUSSION

ATTORNEY'S FEES AND COSTS

"[A] thorough judicial review of fee applications is required in all class action settlements." *In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 819 (3d. Cir. 1995). The District Court must review fee requests independent of any objections by the parties. *In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 730 (3d. Cir. 2001). The necessity of this review derives from the fact that it is the court's duty to detect abuse and also to deal with potential public misunderstandings about attorney's fees. *G.M. Trucks*, 55 F.3d at 820. Despite this duty of oversight, however, the Supreme Court has warned that "[a] request for attorney's fees should not result in a second major litigation." *Hensley v. Eckherhart*, 461 U.S. 424, 437 (1983).

    A.    Percentage of Recovery Method

There are two tests that courts employ when calculating attorney's fees: the percentage of recovery method and the lodestar method. *Cendant PRIDES*, 243 F.3d at 722. There has been much discussion about which methodology is proper for class action settlements in recent years. *See G.M. Trucks*, 55 F.3d at 821-22; Report of the Third Circuit Task Force, Court Awarded Attorney Fees, 108 F.R.D. 237 (1985). Initially, the 'lodestar method" held sway in the Third Circuit. *See Lindy Bros. Builders, Inc. Of Philadelphia v. American Radiator and Standard Sanitary Corp.*, 487 F.2d 161 (3d. Cir. 1973). However, it is now established in the Third Circuit that percentage of recovery is the proper method for common fund cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d. Cir. 2000); *In re Prudential Ins. Co. Of Am. Sales Practices Litig.* (*Prudential II*), 148 F. 3d 283, 333-34 (3d. Cir. 1998). The lodestar method, by

contrast, is reserved for statutory fee-shifting cases, *Prudential II*, 148 F. 3d at 333, though it is also employed as a cross-check for the percentage of recovery method in common fund cases. *See Cendant PRIDES*, 264 F.3d at 185.  Thus, when the defendant voluntarily undertakes the process of compensating opposing counsel, as here, the percentage of recovery method is to be used.  *In re Diet Drugs*, 582 F.3d 524, 541 (3d. Cir. 2009).

The percentage recovery method involves two steps.  First, the court assesses the value of the settlement.  *G.M. Trucks*, 55 F.3d at 822.  Second, the court awards a reasonable percentage of that value as attorney's fees.  *Id.*  In setting a reasonable percentage award the Third Circuit considers the following list of nonexclusive factors:

> (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases.

*Gunter*, 223 F.3d at 195 n.1.

Applying these factors to smaller class action settlements, the percentage award has ranged from 19% to 45% in the Third Circuit.  *See G.M. Trucks*, 55 F.3d at 822; *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000).  Settlements larger than $100 million, so-called mega-fund cases, generally have lower percentage awards, ranging from 2.8% to 36%.  *Cendant*, 243 F.3d at 737-38.  The Third Circuit has also noted that in these mega-fund cases, factors (1), (3), and (7) should receive less weight than the other factors.  *Id.* at 283-84.

Instantly, petitioners seek a fee equal to between two and three percent of the settlement. Because the settlement has been finalized, the court is in an adequate position to review the requested fees in light of the *Gunter* factors.

### 1. Size of Fund and Number of Persons Benefitted

Generally, as the settlement fund increases, courts decrease the percentage of award for attorneys. *Prudential II*, 148 F.3d at 339. The Third Circuit has said that the "basis for this inverse relationship is the belief that in many instances the increase [in recovery] is merely a factor of the size of the class and has no direct relationship to the efforts of counsel." *Id*.

Here, the settlement is valued between $687 to $815 million. *Class Counsel's Updated Petition for Fees and Expenses* [Doc.198], pg. 20. The settlement will benefit 1.8 million members in the class. *Id*. at 1. Members of the class are significantly benefitted by the settlement because they receive all cash compensation and there remains an open period of twenty five years for additional claims. Thus, the large number of class members and large settlement value weigh in favor of the Petitioner's fee request. *See In re Diet Drugs*, 553 F. Supp. 2d at 472 (noting that $6.44 billion settlement fund obtained for 800,000 class members weighed in favor of fee request).

### 2. Presence or Absence of Substantial Objections

"[A] client's views regarding her attorneys' performance and their request for fees should be considered when determining a fee award." *Gunter*, 233 F.3d at 199. If there are few objections to the fee request, then it can be presumed that the client was satisfied with counsel's performance. *Id. See also In re Cendant Corp. Derivative Action Litig.,* 232 F. Supp. 2d 327, 338 (D.N.J. 2002) (noting an extremely small number of objections to fee request favors approval of requested fee).

When the deadline for class member objections passed, 442 objections were filed out of a potential 1.8 million, less than .03% of the class. Further, 357 of these objectors were

represented by a single attorney, James Capretz.  Nearly all of the Capretz objectors have since withdrawn their objections to the settlement, so that, as of August 27, 2010, around seventy-nine objections remain.  Hence, considering the near unanimous support of the settlement, this factor weighs heavily in favor of the reasonableness of the fee request.

      3. Skill and Efficiency of Counsel

Results that a lawyer obtains for a class evidence his or her skill and efficiency.  *In re Lucent Technologies, Inc., Securities Litig.*, 327 F. Supp. 2d. 426, 437 (D.N.J. 2004).  Indeed, lawyers receive fee awards to ensure "that competent counsel continue to undertake risky, complex, and novel litigation."  *Gunter*, 223 F.3d at 198.

Class counsel obtained impressive results in the instant litigation.  Twenty-three law firms filed claims against the Defendant.  Class counsel were able to organize and resolve all of the claims into a single settlement valued between $687 to $815 million, and benefitting approximately 1.8 million people.  I note that this is a considerable achievement, given that class counsel did not have the aid of the government but expended their own time, money, and resources to construct the settlement.  *See In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp.2d 706, 735 (E.D.Pa. 2001) (noting that lack of assistance from the government points to skill and efficiency of class counsel).  I further note the significance that class counsel did not negotiate their own fees until all of the settlement terms had been fully negotiated.  *See In Re Prudential Ins. Co. of America Sales Practices Litigation (Prudential I)*, 962 F. Supp. 572, 577 (D.N.J. 1997) (lauding attorneys for negotiating settlement prior to negotiating attorney's fees).  Thus, the skill and efficiency demonstrated by class counsel weighs in favor of the requested fee.

4. Complexity and Duration of Litigation

"The complexity and duration of the litigation is the first factor a district court can and should consider in awarding fees." *Gunter*, 223 F.3d at 197.  When litigation is short and straight-forward, awards of comparatively large attorney's fees are windfalls to counsel. *Id*.

As previously stated, this litigation was both complex and drawn out. The first case was filed in 2006. Thereafter, nearly three years of extensive discovery followed, including depositions, interrogatories, inspection of roofs, and analysis of shingle samples. The settlement provides that the class period remains open for twenty five years, so that the litigation does not end now, and class counsel will be continually monitoring claims. Furthermore, this settlement is the culmination of multiple cases, as twenty-three law firms filed actions against Defendant. The process was contested, taking nineteen months to complete. Overall, this factor supports the fee request.

5. Risk of Non-Payment

Courts are also to look at the risk of non-payment that counsel take by bringing the lawsuit. *Gunter*, 223 F.3d at 199. This risk is intensified when counsel undertake the case on a contingent basis, spending their own money to represent the plaintiffs, and receiving no assistance from the government in pursuing the defendants. *Lucent*, 327 F. Supp.2d at 436.

At all times during the litigation, Class Counsel faced the risk that their efforts would prove unsuccessful. Despite this fact, they undertook representation on a contingent basis, expending 29,464.95 hours and $613,800.03 to do so. *See In re America Investors Life Ins. Co. v. Annuity Marketing and Sales Practices Litig.*, 263 F.R.D. 226, 244 (E.D. Pa. 2009) (weighing

in favor of fee request where "[c]lass counsel undertook representation on a contingency basis and advanced hundreds of thousands of dollars in expense . . . without guarantee of payment"). This factor weighs in favor of the fee request.

      6. Amount of Time that Counsel Devoted to Case

Class Counsel expended an inordinate amount of time on this litigation, over 29,464 hours. Given that this litigation lasted over four years, that there remains an open period of twenty-five years, and that the litigation was on a contingency basis, this factor also weighs in favor of the fee request.

      7. Awards in Similar Cases

Lastly, the court is to consider awards in similar cases. *Gunter*, 223 F.3d at 195 n. 1. Here, Petitioners seek a percentage award of between two and three percent of the settlement value. Mega-fund cases routinely award a higher percentage for fee requests. *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 167-70 (3d. Cir. 2006) (awarding 21.25% of $100 million settlement); *Rite Aid*, 146 F. Supp. 2d at 706 (awarding 25% of $193 million settlement); *Ikon Office Solutions*, 194 F.R.D. 166 (awarding 30% of $111 settlement); *In re Linerboard Antitrust Litig.*, 2004 WL 1221350 (E.D. Pa. 2004) (awarding 30% of $200 million settlement). Thus, the comparatively small request by Petitioners weighs in their favor.

      B.     Lodestar Cross-Check

While I am satisfied that the requested fee calculation is reasonable, I will nonetheless double-check the result by applying the lodestar method, consistent with Third Circuit guidance in common fund cases. *See Cendant PRIDES*, 264 F.3d at 185.

Under this approach, courts calculate a "lodestar" amount by multiplying "the number of hours he or she reasonably worked on a client's case by a reasonable hourly billing rate for such services given the geographical area, the nature of the services provided, and the experience of the lawyer." *G.M. Trucks*, 55 F.3d at 822.  The court can make adjustments to the lodestar if it is not reasonable compared to the results obtained by the petitioning lawyer.  *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d. Cir. 1990).

Each firm involved in this litigation has provided the court with a summary of their time spent on the case, including the nature of every person who worked on the case and his or her current billing rate.  *Declaration of Co-Lead Counsel Michael McShane in Support of Class Counsel's Updated Petition for Fees and Expense* [Doc. 198-40], Ex. D, p.2-3.  This allows the court to utilize a blended rate to accurately determine the multiplier.  *See Rite Aid*, 396 F.3d 294, 298-99.

When calculated, the lodestar value is $12,416,263.25.  Dividing the lodestar into the requested fee award of $21,886,199.97 yields a multiplier of 1.76.  This multiplier is reasonable under the circumstances, especially when compared to fee awards of similar cases.  *See Prudential II*, 148 F.3d at 341 (noting that multipliers ranging from one to four are frequently awarded in common fund cases).  In addition, Class Counsel note that this multiplier will become lower, as Class Counsel must remain involved in the claims process for another twenty five years.

C. Reimbursement of Out-of-Pocket Expenses

Class Counsel seek $613,800.03 in expenses for handling the litigation. The expenses are adequately documented. *See Abrams v. Lightolier, Inc.*, 50 F.3d 1204, 1225 (3d. Cir. 1995). The expenses are also reasonable and appropriate for a large, complex, multi-year litigation. Thus, I recommend that the Court awards $613,800.03 in out-of-pocket expenses.

## CONCLUSION

In light of the complexity of this litigation and the effort and skill with which Class Counsel constructed a profitable settlement, I find that the requested fee and reimbursement for expenses is reasonable.

## RECOMMENDATION

For the reasons set forth above, it is recommended that the request of fees in the amount of $21,886,199.97 and out-of-pocket expenses in the amount of $613,800.03 be granted.

BY THE COURT:

_S/M. FAITH ANGELL_____
M. FAITH ANGELL
UNITED STATE MAGISTRATE JUDGE